UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WALTER RUSYNIAK; and ANTHONY
RUSYNIAK,

                          Plaintiffs,                5:07-CV-0279
                                            (GTS/RFT)

v.

ENA PAOLA GENSINI; GUNILLA
De MONTAIGU; and CONCHA FUTURA, S.A.,

                          Defendants.
_____

APPEARANCES:                             OF COUNSEL:

COSTELLO, COONEY & FEARON, PLLC      ROBERT M. SMITH, ESQ.
  Counsel for Plaintiffs                KRISTEN L. PICKARD, ESQ.
205 South Salina Street
Syracuse, NY 13202-1327

HISCOCK & BARCLAY, LLP             ROBERT A. BARRER, ESQ.
  Counsel for Defendants Gunilla
  De Montaigu and Concha Futura, S.A.
One Park Place
300 South State Street
Syracuse, NY 13202-2078

GREENE, HERSHDORFER & SHARPE     VICTOR J. HERSHDORFER, ESQ.
  Counsel for Defendant Ena Paola Gensini
One Lincoln Center, Suite 330
Syracuse, NY 13202-1309

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Walter Rusyniak and Anthony Rusyniak ("Plaintiffs") commenced this action against Ena

Paola Gensini, Gunila De Montaigu, and Concha Futura, S.A. ("Defendants"), asserting claims

of (1) fraud, (2) breach of fiduciary duty, (3) civil conspiracy, (4) breach of contract, and (5)

violation of Panamanian corporate law.  (Dkt. No. 16, at 9-17 [Plf.'s Am. Compl.].)

Currently before the Court are Defendants' motion to dismiss Plaintiffs' Amended Complaint, and Plaintiffs' cross-motion to amend their Amended Complaint.  (Dkt. Nos. 24, 41.) Plaintiffs seek to amend their Amended Complaint to (1) allege newly discovered facts regarding the various causes of action asserted in their Amended Complaint, and (2) add, as a party Defendant, Ena Paola Gensini's daughter and attorney in fact, Gioia Gensini.  (Dkt. No. 41, Part 1, at 1.)  For the reasons set out below, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiffs' cross-motion to amend is granted in part and denied in part.

I.    BACKGROUND

A.    Relevant Procedural History

Plaintiffs commenced this action on March 16, 2007.  (Dkt. No. 1.)  On July 12, 2007, Plaintiffs filed an Amended Complaint.  (Dkt. No. 16.)  On August 3, 2007, Defendants jointly filed a motion to dismiss Plaintiff's Amended Complaint based upon Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  (Dkt. No. 24.)  Both before and after the filing of Defendants' motion to dismiss, Plaintiffs sought initial disclosure pursuant to Fed. R. Civ. P. 26.  (Dkt. No. 41, Part 2, at 1.)  As a result, in September 2007, Defendants produced initial disclosure documents Fed. R. Civ. P. 26.  (Dkt. No. 41, Part 2, at 2.)  Subsequently, Plaintiffs sought, and were granted, a thirty (30) day adjournment of the deadline by which they had to respond to Defendants' motion to dismiss. (Dkt. No. 40 and Text Order of Sept. 19, 2007.)  Plaintiffs now assert that these disclosures form the basis of their cross-motion to amend their Amended Complaint.  (Dkt. No. 41, Part 2, at 2.)

###### B.    Factual Allegations of the Proposed Second Amended Complaint

Because Plaintiffs' proposed Second Amended Complaint may cure certain deficiencies asserted by Defendants (in their motion to dismiss) with regard to Plaintiffs' Amended Complaint, and because an amended pleading supersedes a prior pleading in all respects (*see* N.D.N.Y. L.R. 7.1[a][4]), the Court will review the allegations of Plaintiffs' proposed Second Amended Complaint, rather than the allegations of their Amended Complaint.  Liberally construed pursuant to Fed. R. Civ. P. 8(e), Plaintiffs' proposed Second Amended Complaint (Dkt. No. 41, Part 9) alleges as follows.

On or about May 27, 1980, Plaintiff Walter Rusyniak, in a partnership with Geoffredo Gensini, established a corporation in the Republic of Panama under the name of Concha Futura, S.A.  On or about August 6, 1980, Geoffredo Gensini sold two parcels of land located in the Republic of Panama to Concha Futura, S.A., for thirty-seven thousand dollars ($37,000) in exchange for a twenty-five (25) percent ownership interest in Concha Futura, S.A.  On or about August 6, 1980, Plaintiff Walter Rusyniak purchased a twenty-five (25) percent ownership interest in Concha Futura, S.A.[1]  The investments of Geoffredo Gensini and Walter Rusyniak provided the initial capitalization for Concha Futura, S.A.[2]  Two other shareholders, Roland De

---

[1]    A Certificate of Share Ownership filed in the registry books of the Republic of Panama states that Concha Futura, S.A., received payment in full, and exempted Plaintiff Walter Rusyniak from any future obligation.  (Dkt. No. 41, Part 10, at 13.)

[2]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 21.)  "Although there is no express authorization in the federal rules for pleading 'on information and belief,' allegations in this form have been held to be permissible."  5 Wright, & Miller, Federal Practice and Procedure § 1224.  More specifically, pleading on information and belief is permissible when the plaintiff lacks certainty regarding the statement of a claim, "but he has sufficient data to justify interposing an allegation on the subject."  *Id*.  However, "pleading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption."  *Id*.

Montaigu and Guido Bezzera, were to invest in Concha Futura, S.A., within close proximity to the initial capitalization.[3]

On or about January 10, 1981, the four shareholders of Concha Futura, S.A., held a meeting in which they amended the Articles of Incorporation.[4]  At the meeting on January 10, 1981, the Board accepted the resignation of Guido Bezzera and accepted the nomination of Theodore Venners as his replacement.  In the Articles of Incorporation, the shareholders set forth numerous provisions, most notably (1) a provision that the President of the Board (and, in his absence or defection, the Vice-President of the Board) will be the legal spokesperson of the company, and (2) a provision that only the existing officers actually in office could elect new officers to fill vacancies.  The shareholders also established that Geoffredo Gensini would serve as President, Walter Rusyniak as Vice-President, Ronald De Montaigu as Secretary/Treasurer, and Theodore Venners as a member at large.  In the event that Geoffredo Gensini passed away, Walter Rusyniak would take on Geoffredo Gensini's role as the legal spokesperson for the company.

Following the meeting on January 10, 1981, an extended period of time passed with no communication between the shareholders.[5]  On October 15, 1986, Geoffredo Gensini passed away, which, according to Plaintiffs, resulted in Walter Rusyniak becoming the President of

---

[3]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 22.)

[4]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 23.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged.  (Dkt. No. 41, Part 10, at 15-17.)

[5]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 28.)

Concha Futura, S.A., under the Corporate Bylaws.[6]  In 1995, Plaintiffs traveled to Panama to determine the status of the corporation and its members.  Plaintiffs confirmed that there had been no activity in the corporation, that the corporation remained in good standing despite its inactivity, that the land held by Concha Futura, S.A., remained in good standing despite its inactivity, and that the land held by Concha Futura, S.A., remained in the name of the corporation.  It was also clear to Plaintiffs, from a review of the records of Concha Futura, S.A., that no ongoing annual meetings or duties were being undertaken by the corporation.

In early 1996, a meeting was conducted in New York City by the spouse of the late Geoffredo Gensini, Defendant Ena Paola Gensini, who claimed to be acting as President "ad hoc" in her husband's place.[7]  Defendant Gensini was accompanied by the wife of the deceased Roland De Montaigu, Defendant Gunila De Montaigu, who claimed to be acting as Vice-President "ad hoc."  Also present were Alberto A. Tile, acting as Secretary/Director, and Laurent De Montaigu, acting as Treasurer/Director.  These new directors and officers were elected to the Board by Defendants Gensini and De Montaigu.[8]  No notice was given to Plaintiffs regarding this meeting, by publication or otherwise.[9]  Defendants used this meeting to usurp Plaintiff

---

[6]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 29.)

[7]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 38.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged.  (Dkt. No. 41, Part 10, at 19-23.)

[8]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 40.)  The Court notes that this is a fact of which Plaintiffs likely would not have personal knowledge.

[9]    Plaintiffs also allege that the election of these new directors was "in direct conflict with the provisions of the Corporate Bylaws.  No basis exists for the creation of 'ad hoc'

Walter Rusyniak's authority and to take over the corporation and its assets.[10]

In January 1997, another meeting was held during which "ad hoc" directors made numerous changes to the Corporate Bylaws and Agreements without any notice to Plaintiff Walter Rusyniak.[11]  One of the changes made at this meeting was to reduce the majority vote required to sell, lease, exchange or dispose of property or assets from seventy percent (70%) to sixty percent (60%).[12]  Another decision made at this meeting was that Plaintiff Walter Rusyniak had forfeited his shares because several letters of collection were sent to him, with no payment having been credited, and the Board therefore annulled his Certificate of Shares.[13]

_____

corporate officer positions, and the positions were intentionally claimed to avoid the legal necessity of dealing with the corporation's only remaining officer, Walter Rusyniak."  (Dkt. No. 41, Part 9, at 8.)  Because this is a legal conclusion, the Court does not accept this statement as true.  *See, e.g., Lipin v. Hunt*, 538 F. Supp.2d 590, 594 (S.D.N.Y. 2008) ("For purposes of a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but need not credit 'legal conclusions, deductions or opinions couched as factual allegations.'") (citation omitted).

[10]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 43.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, exhibits that support the fact that, after that meeting, meetings were subsequently held, whereby decisions about the corporation and its assets were made, and Plaintiff Walter Rusyniak was not notified and/or present at these meetings.  (Dkt. No. 41, Part 10, at 25-29, 31-32.)  As a result, the Court will accept this statement as true.

[11]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 44.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged.  (Dkt. No. 41, Part 10, at 25-29.)

[12]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 45.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged.  (Dkt. No. 41, Part 10, at 25-29.)

[13]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 46.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact

After this meeting, Defendants conducted the business of Concha Futura, S.A., as if they were the legitimate officers.[14]  Up until January 2006, Defendant Ena Gensini lived in Manlius, New York, Defendant De Montaigu held property in Paris, France, and Alberto Tile, as well as Concha Futura, S.A., were based in Panama.[15]  As a result, the parties coordinated meetings and conducted their affairs through written correspondence and telephone conversations between New York, Panama and/or France.[16]  Part of this correspondence included discussions of selling Concha Futura assets.  Plaintiff Walter Rusyniak was never included in any of the aforementioned communications.

On or about June 14, 2002, Defendant Ena Gensini granted her daughter, Gioia Gensini, a Power of Attorney over her banking.[17]  This Power of Attorney also conferred on Gioia Gensini the authority to represent Ena Paola Gensini's interest in Concha Futura, S.A.[18]

---

alleged.  (Dkt. No. 41, Part 10, at 25-29.)

[14]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 47.)  The Court notes that this is a fact of which Plaintiffs likely would not have personal knowledge.

[15]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 47.)  The Court notes that this is a fact of which Plaintiffs likely would not have personal knowledge.

[16]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 47.)  The Court notes that this is a fact of which Plaintiffs likely would not have personal knowledge.

[17]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 49.)  However, this factual allegation is supported by the affidavit of Gioia Gensini, which states, "[Ena Paola Gensini's] banking is being handled by me under a Power of Attorney, dated June 14, 2002."  (Dkt. No. 24, Part 3, ¶ 10.)

[18]    Plaintiffs' factual assertion (that the Power of Attorney authorized Gioia Gensini to represent Ena Paola Gensini's interest in Concha Futura, S.A) appears consistent with Exhibit

In June 2005, the "ad hoc" Board met in Syracuse, New York.[19]  At that meeting, the "ad hoc" group voted to enter into a promise to sell the two parcels of land owned by Concha Futura, S.A., through Alberto Tile.  No notice of this meeting was provided to Plaintiff Walter Rusyniak, despite the fact that he resided in close proximity to the meeting location.  On or about July 11, 2005, in the Republic of Panama, Alberto Tile, as representative of the "ad hoc" officers of Concha Futura, S.A., entered into a promise to sell the parcels of land owned by the corporation to Atahualpa Panama Incorporated.[20]

In May 2006, Plaintiff Anthony Rusyniak flew back to Panama to again confirm the

--------

I to their proposed Second Amended Complaint, which plausibly suggests that, on May 8, 2006, Gioia Gensini sent an email message to Attorneys Alberto Tile and Laurence Bousquet, responding to Attorney Tile's email message of earlier that day, and authorizing Attorney Tile to proceed with assets of Concha Futura, S.A., as he recommended.  (Dkt. No. 41, Part 10, at 42-43.)  Therefore, the Court will accept as true (for purposes of the pending motions) the factual allegation that Gioia Gensini's Power of Attorney authorized her to represent Ena Paola Gensini's interest in Concha Futura, S.A.  Having said that, the Court notes that this factual allegation (that the Power of Attorney authorized Gioia Gensini to represent Ena Paola Gensini's interest in Concha Futura, S.A) is based "upon [Plaintiffs'] information and belief."  (Dkt. No. 41, Part 9, at ¶ 50.)  Granted, this is not a fact of which Plaintiffs would ordinarily have personal knowledge.  However, the Court will note that this factual allegation does not therefore mean that Gioia Gensini did in fact represent Ena Paola Gensini's interest in Concha Futura, S.A., prior to the company's sale.  (Dkt. No. 41, Part 10, at 31-32.)  For example, Exhibit G to Plaintiffs' proposed Second Amended Complaint plausibly suggests that, on June 24, 2005, Ena Paola Gensini, acting in her capacity as president of Concha Futura, S.A, met with the other members of the Board of Directors of Concha Futura, S.A, in Syracuse, New York to discuss and agree to the sale of Concha Futura, S.A., assets.

[19]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 51.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged.  (Dkt. No. 41, Part 10, at 31-32.)

[20]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 54.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged.  (Dkt. No. 41, Part 10, at 34-40.)

status of the corporation's assets,[21] assuming that they were in the same state they had been in from 1981 to 1995, when he and his father duly confirmed the corporation was in good standing.[22]  During his investigation, Plaintiff Anthony Rusyniak discovered that there were investors poised to purchase the land originally sold to Concha Futura, S.A., by Geofreddo Gensini in his efforts to capitalize the corporation some twenty-five (25) years earlier.[23] Defendants were aware that Plaintiff Anthony Rusyiak was investigating the status of the corporation and had heard about a potential sale of the land.[24]

After an extended effort, Plaintiffs obtained, from Panamanian officials, information relating to Concha Futura, S.A.  This information consisted of minutes of alleged "shareholder meetings" held by Defendants.  Plaintiff Walter Rusyniak had no knowledge or prior notice of any shareholder meetings, despite the provisions requiring due notice in the Articles of Incorporation and Bylaws.[25]  In addition, none of the legitimately elected corporate officers or

---

[21]    According to the Pleadings, Anthony Rusyniak, who is the son of Walter Rusyniak, became the owner of Walter Rusyniak's interest in Concha Futura, S.A., through a transfer in accordance with provision three (3) of the Corporation Agreement.  (Dkt. No. 41, Part 9, at ¶ 14.)  Provision Three (3) of the Company Agreement states that, "[i]n the case of death, physical or mental disability of a member, the shares will be transferred exclusively to the member's spouse or children."  (Dkt. No. 41, Part 10, at 17.)

[22]    Plaintiffs allege that they had no cause to believe otherwise because Walter Rusyniak was the President and sole Director of the closely-held corporation, and thus no legal activity could be conducted without notice to him and/or in his presence.  (Dkt. No. 41, Part 9, at ¶ 32.)

[23]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 33.)

[24]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 55.)  The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged.  (Dkt. No. 41, Part 10, at 42-43.)

[25]    Plaintiffs allege this fact "upon information and belief."  (Dkt. No. 41, Part 9, at ¶ 36.)

members of the Board were present at any of the aforementioned meetings.[26]

On May 8, 2006, Gioia Gensini sent an email message to Attorneys Alberto Tile and Laurence Bousquet, responding to Attorney Tile's email message of earlier that day, and authorizing Attorney Tile to sell the assets of Concha Futura, S.A., within forty-eight (48) hours, as he recommended.[27]

As a result, in or about May of 2006, two Concha Futura, S.A., land parcels were sold.[28] Plaintiffs did not receive any of the profits from these sales.[29]

## II.    RELEVANT LEGAL STANDARDS

### A.    Motion to Amend

---

[26]    Plaintiffs allege this fact "upon information and belief." (Dkt. No. 41, Part 9, at ¶ 37.) The Court notes that this is a fact of which Plaintiffs likely would not have personal knowledge.

[27]    Plaintiffs allege this fact "upon information and belief," adding that the words "because plaintiff Anthony Rusyniak was asking questions about the corporation and its land assets he was known to have an interest in." (Dkt. No. 41, Part 9, at ¶ 103.) Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact that on May 8, 2006, Gioia Gensini sent an email message to Attorneys Alberto Tile and Laurence Bousquet, responding to Attorney Tile's email message of earlier that day, and authorizing Attorney Tile to proceed with asserts of Concha Futura, S.A., as he recommended. (Dkt. No. 41, Part 10, at 42-43.) However, even liberally construed, the exhibit does not plausibly suggest that the action was recommended, or agreed to, "because plaintiff Anthony Rusyniak was asking questions about the corporation and its land assets he was known to have an interest in." (*Id*.) The Court notes that the motive for the recommended action, and its timing, is clearly stated in Attorney Tile's underlying email message: "[T]he son of W. Rusyniak[] intends to initiate a demand in Panama, as he considers himself [a] shareholder of the company, [because] he is in possession of stock certificates of Concha Futura, S.A.. Such certificate was considered voided by Stockholders in January 1997, because the corresponding investment was not performed." (*Id*.)

[28]    Plaintiffs allege this fact "upon information and belief." (Dkt. No. 41, Part 9, at ¶ 57.) The Court notes that Plaintiffs have attached to their proposed Second Amended Complaint, and incorporated by reference therein, an exhibit plausibly suggesting the fact alleged. (Dkt. No. 41, Part 8, at 10, 12, 17-18.)

[29]    (Dkt. No. 41, Part 9, at ¶ 115.)

Plaintiffs' motion to amend is made pursuant to Fed. R. Civ. P. 15(a), which explicitly provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Elaborating on this standard, the Supreme Court has explained that leave to amend should be freely given

> [i]n the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . .

*Foman*, 371 U.S. at 182, *accord*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

With regard to the futility exception, courts measure futility under the same standard as they do a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir 2001), *overruled on other grounds by Slayton Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

### B.    Motion to Dismiss for Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2) and, in cases alleging fraud, Fed. R. Civ. P. 9(b);[30] or (2) a challenge to the legal cognizability of the claim.[31]

---

[30]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 212, n. 17 (N.D.N.Y.2008) (McAvoy, J., adopting Report-Recommendation on de novo review) (citations omitted). The main purpose of this rule is to "facilitate a proper

---

formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[31]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion–one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

decision on the merits." *Jackson*. 549 F. Supp. at 212, n.18 (citations omitted).[32]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ.

P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established

pleading requirements that exceed this liberal requirement. *Id.* at 212, n.20 (citations omitted).

However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n.21 (citations

omitted). As a result, numerous Supreme Court and Second Circuit decisions exist holding that

a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n.22 (citations

omitted).

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the

Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability*

of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of

an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]." *Id.* at 1965 (citations omitted). More

specifically, the "[f]actual allegations must be enough to raise a right to relief above the

---

[32]    *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") (citation omitted); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") (citations omitted).

speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. (citations omitted).[33]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[34]  It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set

---

[33]    *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[34]    *See, e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") (citation omitted) (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[35]

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Board of Educ. of Pawling Cent. Sch. Dist. v. Schultz*, 290 F.3d 476, 479 (2d Cir. 2002).

### C.    Motion to Dismiss for Lack of Jurisdiction

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, 04-CV-1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005)  "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Harris*, 2005 WL 503935, at *1 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 [2d Cir. 1999]). "Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, the service of a summons establishes personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'"

---

[35]    For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson*, 127 S. Ct. at 2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court).  This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

*Id*. (citation omitted).  "Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id*. (citation omitted)

The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant, since Defendant has served the Rule 12(b)(2) motion." *Aldinger v. Segler*, 04-CV-4405(RJH), 2005 WL 2591958, at *2 (S.D.N.Y. Oct.13, 2005) (internal quotation marks and citation omitted). Unless a court conducts "a full-blown evidentiary hearing," the plaintiff only needs to make "a prima facie showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted).  "In other words, prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith, . . . legally sufficient allegations of jurisdiction." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted).  However, "[o]nce discovery regarding a defendant's contacts with the forum is conducted," the plaintiff's burden is heightened, with the requirement that the "prima facie showing . . . include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id*. (internal quotation marks and citations omitted).

"If the plaintiff fails to make the requisite showing, [the Court] may dismiss the complaint pursuant to Rule 12(b)(2)." *Id*.  In the alternative, the Court may "transfer venue[,] even it if lacks personal jurisdiction over defendants, if the requirements of the governing statute, 28 U.S.C. § 1404(a), are met." *Id*. (internal quotation marks and citations omitted).  "When evaluating the parties' submissions, the Court will read the Complaint and submissions in the light most favorable to Plaintiff." *Daou v. Early Advantage, LLC*, 410 F. Supp.2d 82, 88-89 (N.D.N.Y. 2006) (Scullin, J.) (citations omitted).

16

III.    **ANALYSIS**

Because an analysis of Defendants' motion to dismiss is intertwined with an analysis of Plaintiffs' motion to amend, the Court will frame its analysis around Plaintiffs' motion to amend, and address the legal arguments asserted in Defendants' motion to dismiss below in Part III.D. of this Decision and Order.

A.    **Undue Delay**

"In *Foman v. Davis*, the Supreme Court held that, despite the liberal pleading standards set forth in Fed. R. Civ. P. 15, a party's motion for leave to amend a pleading may be denied if that party has shown 'undue delay' in seeking the amendment." *Am. Med. Ass'n v. United Healthcare Corp.*, 00-CV-2800, 2006 WL 3833440, at *3 (S.D.N.Y. Dec. 29, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 [1962]). "As the Court of Appeals has explained, a district court 'plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.'" *Am. Med. Ass'n*, 2006 WL 3833440, at *3 (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 [2d Cir. 1990]). "When a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." *Id.* (citations omitted).

Here, Defendants do not attack Plaintiffs' motion to amend on the ground of undue delay. After carefully considering the matter, the Court finds that, because the motion to amend has been made relatively early in the proceedings, and was made shortly after Plaintiffs received certain disclosures from Defendants, there has been no undue delay in seeking the amendment.

17

**B.     Bad Faith**

"Under Rule 15(a) as construed by the Supreme Court in *Foman*, a party's dilatory motive is a legitimate basis for a court's denying that party's motion to amend a pleading." *Am. Med. Ass'n*, 2006 WL 3833440, at *5 (citing *Foman*, 371 U.S. at 182). "When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims . . . the court is free to deny leave to amend." *Id.* (citing *PI, Inc. v. Quality Products, Inc*., 907 F. Supp. 752 [S.D.N.Y. 1995]).

Here, it is true that Plaintiffs' motion to amend was filed after Defendants' filed a motion to dismiss. However, Defendants do not attack Plaintiffs' motion to amend on the ground of bad faith or dilatory motive. After carefully considering the matter, the Court finds that, because the motion to amend was made shortly after Plaintiffs received certain disclosures from Defendants, the motion is not being made in bad faith or with a dilatory motive.

**C.     Undue Prejudice to Defendants**

"In *Foman*, the Supreme Court held that leave to amend can be denied when the proposed amendment would cause undue prejudice to the opposing party." *Am. Med. Ass'n*, 2006 WL 3833440, at *6 (citing *Foman*, 371 U.S. at 182). "The Court of Appeals has advised that, in determining what constitutes 'prejudice, courts consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id*. (citation and internal quotations omitted).

Here, Defendants do not attack Plaintiffs' motion for leave to amend on the ground of

undue prejudice.  After carefully considering the matter, the Court finds that, because the motion

to amend has been made at a relatively early stage of the proceeding (i.e., approximately seven

months after the action was filed), Defendants will not suffer undue prejudice under any of the

three tests for such prejudice.

### D.    Futility

"In addition to undue delay, bad faith, and undue prejudice, a court may exercise its

discretion to deny a party's motion to amend a pleading when the proposed amendment would be

futile."  *Am. Med. Ass'n*, 2006 WL 3833440, at *7 (citing *Foman*, 371 U.S. at 182).  As

explained above in Part II.A. of this Decision and Order, an amendment is considered futile if it

could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  A defendant may

base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the

pleading" under Fed. R. Civ. P. 8(a)(2) and, in cases alleging fraud, Fed. R. Civ. P. 9(b); or (2) a

challenge to the legal cognizability of the claim.  With regard to the first ground, Fed. R. Civ. P.

8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In *Bell Atlantic*

*Corporation v. Twombly*, the Supreme Court explained that, rather than turning on the

*conceivability* of an actionable claim, this Fed. R. Civ. P. 8(a)(2) standard turns on the

*plausibility* of an actionable claim.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-74

(2007).  More specifically, the factual allegations must be enough to raise a right to relief above

the speculative level to a plausible level.  *Twombly*, 127 S. Ct. at 1965 (citations omitted).

Here, Plaintiffs have cross-moved to amend their Amended Complaint to (1) allege

newly discovered facts regarding various causes of action asserted in their Amended Complaint,

and (2) add, as a party Defendant, Ena Paola Gensini's daughter and attorney in fact, Gioia

Gensini.  (Dkt. No. 41, Part 1, at 1.)  In opposing Plaintiffs' cross-motion, Defendants argue that

the proposed amendments are futile because the proposed Second Amended Complaint does not

cure any of the defects that warrant the dismissal of the Amended Complaint.  In addition,

Defendants argue that, because Plaintiffs have failed to plead fraud with particularity in either

their Amended Complaint or their proposed Second Amended Complaint, it would be futile to

allow Plaintiffs leave to amend their Amended Complaint to (1) assert new facts relating to

Plaintiffs' fraud claim and (2) add a claim of fraud against a new Defendant.

In essence, Defendants' arguments constitute challenges to three of Plaintiffs' claims

individually (i.e., Plaintiffs' claims of fraud, breach of fiduciary duty, and civil conspiracy), as

well as challenges to all of Plaintiffs' claims generally (i.e., on the basis of a lack of personal

jurisdiction, the doctrine of forum non conveniens, a lack of standing, and the statute of

limitations).

### 1.    Defendants' Challenge to Plaintiffs' Claims of Fraud

#### a.    Plaintiffs' Claims Against Defendants Ena Gensini and Gunila De Montaigu

"Under Rule 9(b), certain claims, [including fraud], must also be plead with particularity,

e.g., a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made and (4) explain why the

statements were fraudulent."  *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp.2d 158, 162

(S.D.N.Y. 2003).  However, "[m]alice, intent, knowledge, and other condition of mind of a

person may be averred generally."  Fed. R. Civ. P. 9(b).  "Thus, while the actual . . . fraud

alleged must be stated with particularity . . . the requisite intent of the alleged perpetrator of the

fraud need not be alleged with great specificity." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91

(2d Cir. 2000) (citing *Chill v. General Elec. Co.*, 101 F.3d 263, 267 [2d Cir. 1996]) [other

citation omitted].  As a result, "the more general standard to scienter" should be applied when a

defendant's state of mind is at issue because "a plaintiff realistically cannot be expected to plead

a defendant's actual state of mind." *Wight*, 219 F.3d at 91-92 (citing *Conn. Nat'l Bank v. Fluor

Corp.*, 808 F.2d 957, 962 [2d Cir. 1987]).

      In their proposed Second Amended Complaint, Plaintiffs allege that the shareholder

meetings that took place in early 1996, January of 1997, and June of 2005 "resulted in the

commission of numerous instances of fraud."  (Dkt. No. 41, Part 9, at 15.)  More specifically, as

explained above in Part I.B. of this Decision and Order, Plaintiffs allege that Defendants

fraudulently (1) voted themselves as officers of the company, (2) declared that Walter Rusyiak

owed payments to Concha Futura, S.A., for the stock he purchased during the initial

capitalization, (3) declared that Walter Rusyniak forfeited his interest in the company and

annulled his shares without providing him with notice, (4) spoke on behalf of the company and

represented to third parties that the company's assets were for sale, and (5) voted to sell the

property and in fact sold the property.  In addition, Plaintiffs allege that it was fraudulent for

Defendants to intentionally exclude Plaintiff Walter Rusyniak from these meetings by not

providing him with notice of these meetings because he was a shareholder of the company.

Finally, Plaintiffs allege that Defendants intentionally coordinated meetings with each other

through written correspondence and telephone conversations between New York, Paris and

Panama in order to discuss fraudulent company activity.

      In response, Defendants argue that Plaintiffs have failed to plead fraud with particularity,

and/or that the fraud claims are futile. Defendants construe Plaintiffs' proposed Second Amended Complaint as containing three claims of fraud against Defendants Ena Gensini and Gunila De Montaigu: (1) a claim that those two Defendants fraudulently stated in the 1997 shareholder meeting that Walter Rusyniak owed payments for his interest in Concha Futura, S.A.; (2) a claim that those two Defendants fraudulently met on June 24, 2005, in Syracuse, New York for the purpose of selling the assets of Concha Futura, S.A.; and (3) a claim that those two Defendants fraudulently engaged in written and telephone correspondence regarding the company over the years.

With regard to the first claim of fraud (i.e., that Defendants fraudulently stated in the 1997 shareholder meeting that Walter Rusyniak owed payments for his interest in Concha Futura, S.A.), Defendants argue that this claim lacks particularity (and therefore must be dismissed) because it lacks any factual allegations plausibly suggesting that (1) any particular Defendant made the statement, (2) either Plaintiff heard the statement, and (3) either Plaintiff acted upon the statement (or failed to act in reliance upon the statement).

"Rule 9(b) requires the identification and circumstances constituting the fraud; mere conclusory allegations of fraud will not suffice, but statements of the time, place, and nature of the alleged fraudulent activities will." *Houston v. Seward & Kissel, LLP*, 07-CV-6305, 2008 WL 818745, at *3 (S.D.N.Y. Mar. 27, 2008) (citation omitted). In addition, "instead of an affirmative misrepresentation, a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." *Kaufman v. Cohen*, 307 A.D.2d 113, 119-120 (N.Y. App. Div., 1st Dept. 2003) (citation omitted). "Thus, where a fiduciary relationship exists, the mere failure to disclose facts which one is required to disclose

may constitute actual fraud, provided the fiduciary possesses the requisite intent to deceive." *Kaufman*, 307 A.D.2d at 120 (internal quotation marks and citations omitted).

Here, Plaintiffs allege that, at the January 1997 meeting, Defendants fraudulently stated that Walter Rusyniak owed payments for his interest in Concha Futura *and* fraudulently annulled Walter Rusyniak's interest in the company based on the belief (fraudulent or otherwise) that Mr. Rusyniak owed payments to the company. After carefully considering the matter, the Court finds that this claim provides Defendants with fair notice of what fraudulent activity they are alleged to have committed. In addition, although the claim does not specify which Defendant made the statement, the claim sufficiently identifies who was (allegedly) engaged in the fraudulent activity: Ena Gensini and Gunila De Montaigu. *Cf. Rey-Willis v. Citibank, N.A.*, 03-CV-2006, 2003 WL 21714947, at *8 (S.D.N.Y. July 23, 2003) (where the "defendant" was a large corporation, the plaintiff failed to plead fraud with particularity because the plaintiff did not "identify, by name or otherwise, the identity of the persons who engaged in fraudulent activity"). As a result, the Court finds that this claim has been pled with sufficient particularity.

With regard to the second claim of fraud (i.e., that Defendants fraudulently met on June 24, 2005, in Syracuse, New York, for the purpose of selling the assets of Concha Futura, S.A.), Defendants argue that, because the continuing-violation doctrine does not toll the accrual of the limitations period under the circumstances, the claim is futile in that the statute of limitations expired on January 8, 2003, more than two years before the meeting on June 24, 2005. More specifically, Defendants argue that the statute of limitations for all of Plaintiffs' claims accrued on or about January 8, 1997, because, due to Panamanian corporate law reporting requirements, the minutes of the January meeting were published in the Panama Registry (giving Plaintiffs

23

notice of the activity which they allege to be fraudulent).  As a result, Defendants argue that,

with reasonable diligence, Plaintiffs could have discovered the fraud, and therefore the

applicable statute of limitations is six years, accruing from the date of the harm (January 8,

1997), barring any claims raised after January 8, 2003.

"[T]he statute of limitations . . . bars fraud claims not brought within six years from the

commission of the fraud or two years from the time the plaintiff discovered the fraud or, with

reasonable diligence, should have done so . . . ."  *Reznor v. J. Artist Mgmt., Inc*., 365 F. Supp.2d

565, 575-76 (S.D.N.Y. 2005) (citing *Shannon v. Gordon*, 670 N.Y.S.2d 887, 888 [N.Y. App.

Div., 2nd Dept. 1998]).  Plaintiffs allegations, which must be accepted as true at this early stage

of the proceedings, are that they did not discover that Defendants held any of these meetings

until May of 2006.  Plaintiffs also allege that, because Walter Rusyniak became President of

Concha Futura, S.A., upon the death of Geoffredo Gensini (and therefore no legal activity could

be conducted without notice to Mr. Rusyniak and/or in his presence), there was no reason for

Plaintiffs to undergo due diligence to check on the status of the company.  After carefully

considering the matter, the Court finds that Plaintiffs have alleged facts plausibly suggesting that

(1) the two-year statute of limitations applies, and (2) Plaintiffs' claims are timely.[36]  As a result,

the Court denies Defendants' motion to dismiss to the extent that it seeks the dismissal of this

claim based on the statute of limitations.

With regard to the third claim of fraud (i.e., that Defendants fraudulently engaged in

written and telephone correspondence regarding the company over the years), Defendants argue

---

[36]    In addition, for the same reasons that it found the first claim of fraud to be
pleaded with sufficient particularity, the Court finds that the second claim of fraud has been
pleaded with particularity.

that this claim is futile (and therefore must be dismissed) because the alleged correspondence occurred either prior to the January 1997 meeting or many years after the expiration of the applicable limitations period (i.e., it occurred in connection with meetings that occurred in 2005 or 2006). After carefully considering the matter, the Court does not find that this claim is barred by the statute of limitations (for the same reasons mentioned above). However, the Court does find that this claim does not provide Defendants with fair notice of what fraudulent company activity they are alleged to have committed. As a result, Plaintiffs' claim that Defendants intentionally coordinated meetings with each other through written correspondence and telephone conversations between New York, Paris and Panama in order to discuss fraudulent company activity is dismissed due to Plaintiffs' failure to plead that claim with particularity.

With regard to the remaining fraud claims stemming from the shareholder meetings, Defendants do not address these claims in their motion to dismiss. In any event, for the reasons previously mentioned, the Court finds that these remaining fraud claims have been plead with particularity and should not be dismissed at this time because of the statute of limitations.

For these reasons, with the exception of Plaintiffs' claim that Defendants discussed and engaged in fraudulent activity through written correspondence between New York, Paris and Panama, the Court grants Plaintiffs' motion to amend to the extent that it seeks leave to assert additional facts related to their fraud claims against Defendants Ena Gensini and Gunila De Montaigu.

### b. Plaintiffs' Claims Against Gioia Gensini

In their proposed Second Amended Complaint, Plaintiffs seek leave to assert two new fraud claims against Gioia Gensini: (1) a claim that Defendants' "agents" (presumably including

Gioia Gensini) intentionally acted in a fraudulent manner when, on or around June or July of 2005, they stated to Plaintiffs that no sale of corporate assets was taking place, although in fact Defendants held a meeting in Syracuse, New York, in June of 2005, in which they voted to sell such assets; and (2) a claim that Gioia Gensini intentionally acted in a fraudulent manner when, on May 8, 2006, she responded affirmatively to an email message sent by Alberto Tile, wherein Mr. Tile asked for permission to sell assets of Concha Futura, S.A., within forty-eight (48) hours.

With regard to the first claim of fraud against Gioia Gensini, this claim is dismissed for two alternative reasons. First, nowhere in their proposed Second Amended Complaint do Plaintiffs identify the "agents" to which they are referring. It bears noting that Gioia Gensini is mentioned in only seven (7) of the one hundred sixteen (116) paragraphs that comprise the body of Plaintiffs' proposed Second Amended Complaint. (Dkt. No. 41, Part 9, ¶¶ 6, 16, 49, 50, 103, 113, 114.)[37] Similarly, she is mentioned in only one (1) of the thirty-four (34) pages of exhibits attached to, and incorporated by reference into, Plaintiffs' proposed Second Amended Complaint. (Dkt. No. 41, Part 10, at 42.)[38] Granted, Gioia Gensini's husband (David Neff) is mentioned in

---

[37]    Specifically, one of these seven paragraphs regards Gioia Gensini's state of residence. (Dkt. No. 41, Part 9, ¶ 6.) Three of these seven paragraphs regard Plaintiffs' "information and belief" about the duration, scope and exercise of Gioia Gensini's Power of Attorney for Ena Paola Gensini (her mother). (*Id*. at ¶¶ 16, 49, 50.) One of these seven paragraphs regards Plaintiffs' "information and belief" about an email message allegedly sent by Gioia Gensini to Attorney Alberto Tile. (*Id*. at ¶ 103.) The remaining two of these seven paragraphs regard Plaintiffs' "information and belief" about a "conspir[acy] to knowingly defraud plaintiff Walter Rusyniak," in which Gioia Gensini was allegedly involved through her alleged exchange of unidentified letters, email messages and telephone calls with "Ena Gensini in New York," "defendant De Montaigu in France," and "the Corporations other 'ad hoc' officers in Panama." (*Id*. at ¶¶ 113, 114.)

[38]    Specifically, this page plausibly suggests that, on May 8, 2006, Gioia Gensini sent an email message to Attorneys Alberto Tile and Laurence Bousquet, responding to Attorney Tile's email message of earlier that day, and authorizing Attorney Tile to proceed as he recommended, i.e., to sell the land in question within the next forty-eight (48) hours. (Dkt. No.

fifteen (15) of the twenty-seven (27) pages that comprise an exhibit *to an affidavit of Plaintiffs'*

*attorney*.[39]  However, an exhibit to an affidavit of an attorney in support of a motion to amend a

pleading (which is not also attached to the proposed amended pleading) is not a part of the

plaintiff's proposed amended pleading.[40]  Moreover, David Neff's alleged role in effecting Gioia

Gensini's intentions is based only upon Plaintiffs' "information and belief."  (Dkt. No. 41, Part 9,

¶ 50.)  "Allegations of fraud cannot ordinarily be based 'upon information and belief,' except as

to 'matters peculiarly within the opposing party's knowledge.'"  *Luce v. Edelstein*, 802 F.2d 49,

54 n.1 (2d Cir. 1986) (citing *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.

1974), *cert. denied*, 421 U.S. 976 [1975]).  "To satisfy Rule 9(b) in the latter instance, the

allegations must be accompanied by a statement of the facts upon which the belief is founded."

*Edelstein*, 802 F.2d at 54 (citing *Segal v. Gordon*, 467 F.2d 602, 608 [2d Cir. 1972]).  As a

result, this claim does not sufficiently identify, for purposes of Fed. R. Civ. P. 8(a) and 9(b), the

---

41, Part 10, at 42.)

[39]     Specifically, these fifteen pages plausibly suggest that sixteen messages, or copies
of messages, were sent to David Neff's email account from Attorney Alberto Tile on the
following dates over a twenty-one month period: April 29, 2005; May 5, 2005; May 18, 2005;
May 27, 2005; June 1, 2005; July 1, 2005; July 15, 2005; August 24, 2005; September 23, 2005;
June 8, 2006; August 4, 2006; October 12, 2006; October 18, 2006; December 21, 2006.  (*See*
Dkt. No. 41, Part 8.)  In addition, on one date (October 16, 2006), a message was sent from
David Neff's email account to Attorney Tile.  (Dkt. No. 41, Part 8, at 17.)  However, since that
message refers to Gioia Gensini's mother as "Ena" and not "my mother" (or a similar familial
term), the message plausibly suggests it was sent by David Neff and not Gioia Gensini.  (*Id.*)

[40]     *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference
elsewhere in the same pleading or in any other pleading or motion.  A copy of a written
instrument that is an exhibit to a pleading is part of the pleading for all purposes.").  For this
reason, the Court need not, and does not, reach the issue of whether an affidavit (or even an
email message) that is attached to a pleading would qualify as a "written instrument" for
purposes of Fed. R. Civ. P. 10(c).  *See Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp.
1108, 1115 (W.D.N.Y. 1996) (affidavits and unsigned letters are not "written instruments" for
purposes of Fed. R. Civ. P. 10[c]) (citations omitted).

persons engaged in the fraudulent activity.  *See, e.g., Contractual Obligation Productions, LLC v. AMC Networks, Inc.*, 04-CV-2867, 2006 WL 6217754, at *9 (S.D.N.Y. Mar. 31, 2006) (plaintiff fails to plead its fraud claim with specificity when it fails to identify the agents who made the false statements).

Second, even if the Court were to assume that one of the agents to which Plaintiffs implicitly refer was Gioia Gensini herself (based on the fact that Plaintiffs seek to add her as a Defendant due to her having a Power of Attorney over her mother's banking), this implicit claim is still defective because Plaintiffs make it "upon information and belief."  (Dkt. No. 41, Part 9, ¶¶ 49-50.)  Whether or not certain agents stated to Plaintiff that no sale of corporate assets was taking place is a fact of which Plaintiffs would have personal knowledge, given that the allegation implies that the statement was made to one or both Plaintiffs.  Because Plaintiffs shrouded this allegation "upon information and belief," they have plausibly suggested that the allegation does not involve a matter "peculiarly within [their] knowledge."

With regard to the second claim of fraud against Gioia Gensini, as explained above in Part I.B. of this Decision and Order, Plaintiffs allege that she responded affirmatively to an email message sent by Alberto Tile wherein Mr. Tile asked for permission to sell assets of Concha Futura, S.A., within forty-eight (48) hours.  They also allege that Gioia Gensini has a Power of Attorney over her mother's banking; and they allege that this Power of Attorney authorized Gioia Gensini to represent Ena Paola Gensini's interest in Concha Futura, S.A.  Finally, they allege that, when she authorized Alberto Tile to sell the assets in question within forty-eight (48) hours, she intentionally acted to the detriment of Plaintiffs.

As previously indicated in footnote 18 of this Decision and Order, the Court assumes as

true Plaintiffs' factual allegation that Gioia Gensini's Power of Attorney over Ena Paola Gensini's banking authorized Gioia Gensini to represent Ena Paola Gensini's interest in Concha Futura, S.A. However, even assuming this fact as true, Plaintiffs' second claim of fraud against Gioia is futile for two independent reasons.

First, according to Plaintiffs' own factual allegations, the June 2005 meeting at which the shareholders first agreed to sell the assets of Concha Futura, S.A., was attended, not by Gioia Gensini, but by Ena Paola Gensini herself. Granted, Plaintiffs also allege that, in May of 2006, Gioia Gensini sent an email message to Attorneys Alberto Tile and Laurence Bousquet, responding to Attorney Tile's email message of earlier that day, and authorizing Attorney Tile to sell the referenced assets within forty-eight (48) hours, as he recommended, and as Ena Paola Gensini agreed in June 2005. However, Plaintiffs have not cited (and the Court is not aware of) any cases that stand for the proposition that an agent may be liable to a third party for fraud (allegedly) committed by the agent's principal.[41] Similarly, Plaintiffs have not cited (and the Court is not aware of) any cases that stand for the proposition that a person holding a Power of

---

[41]    *See* 3 Am. Jur.2d *Agency: Tort Liability* § 298 (2008) ("[W]here a defendant acts as an agent for a known principal, the defendant-agent incurs no liability for a principal's breach of duty.") (citation omitted); 2A N.Y. Jur.2d *Agency and Independent Contractors: Liability for Acts Committed by Principal* § 339 (2008) ("[T]he dereliction of a principal may not be enforced against an agent.") (citations omitted); *Goldman v. Walder*, 97-CV-2455, 1998 WL 5391, at *4 (S.D.N.Y. Jan. 7, 1998) ("Unless its actions fall into one of the acknowledged categories of tort or contract liability, an agent can not be sued for actions taken on behalf of a principal.") (collection cases); *Dorkin v. Am. Express Co.*, 345 N.Y.S.2d 891, 893 (N.Y. Sup. Ct., Albany County, 1973) ("[A]n agent is not responsible for the tortious conduct of a principal.") (citation omitted), *aff'd*, 351 N.Y.S.2d 190 (N.Y. App. Div., 3d Dept 1974); *Sacks v. Loew's Theaters, Inc.*, 263 N.Y.S2d 253, 255 (N.Y. Sup. Ct., Queens County 1965) ("This Court is of the opinion that an agent is not liable for the tortious conduct of a principal."); *cf. LEP Transport, Inc. v. Renaissance Int'l Textiles, Ltd.*, 517 N.Y.S.2d 8, 10 (N.Y. App. Div., 1st Dept. 1987) (New York courts "do not regard with favor a party suing its adversaries' lawyer when . . . opposing counsel seems to have been doing nothing more than conscientiously representing his client").

Attorney has a heightened legal duty to a third party simply because his or her principal has a heightened legal duty to a third party.[42]

Second, Plaintiffs have not identified how or why Gioia Gensini's email response constitutes (1) a statement of material fact that was (2) false, and (3) made with the intent to deceive, and (4) was detrimentally relied upon by Plaintiffs.[43] Moreover, Plaintiffs do not allege facts plausibly suggesting that Gioia Gensini intended to deceive them, or was motivated to

---

[42]    *See* 3 Am. Jur.2d *Agency: Tort Liability* § 298 (2008) ("[A]n agent's tort liability [to a third party] is not based upon the contractual relationship between the principal and agent, but upon the common-law obligation that every person must so act or use that which he or she controls as not to injure another.") (citations omitted); 2A N.Y. Jur.2d *Agency and Independent Contractors: Effect of Agency Relationships on Agent's Tort Liability* § 337 (2008) ("From the standpoint of one injured by the wrongful act of another, the status of the wrongdoer as a principal or agent is immaterial.") (citation omitted). Indeed, it has long been established that "[w]here an agent fails to perform a duty which his principal owes to a third party, the remedy is against the principal . . . ." *Ripley v. Cochran*, 10 Abb. Pr. (n.s.) 52 (New York of Common Pleas, General Term 1870); *see also Moran v. Vreeland*, 143 N.Y.S. 522, 527 (N.Y. Sup. Ct., New York County 1913) (a director of a corporation, as an agent of the corporation, "may be held liable to third parties for his torts and crimes; but he does not personally assume the duties which his corporation owes to others, and where he has assumed no duty by contract or otherwise he is not answerable for his nonfeasance to any but his principal, the corporation of which he is the servant."); *cf. Victor v. Goldman*, 344 N.Y.S.2d 672, 673 *aff'd. without opinion* 43 A.D.2d 1021 (N.Y. App. Div., 2nd Dept. 1974) (although an attorney may be liable to a third party for fraud or collusion, "an attorney owes no duty to third persons for acts committed bona fides in the performance of his obligation to his client, and this remains the rule even where negligence results in damage to the third party.") (citations omitted), *accord, Baer v. Broder*, 436 N.Y.S.2d 693, 694 (N.Y. Sup. Ct., Suffolk County 1981); *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987) (a defendant may be held liable for "inducing or participating in a breach of fiduciary duty" only if the plaintiff is able to prove . . . that the defendant knowingly induced or participated in the breach . . . .") (citing *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 [2d Cir. 1986]).

[43]    Under New York law, the elements of fraud are "a representation of material fact, falsity, scienter, reliance and injury." *Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116 (N.Y. 1991). "The plaintiff must demonstrate each of the fraud elements 'by clear and convincing evidence.'" *Brassco, Inc. v. Klipo*, 99-CV-3014, 2006 WL 223154, at *16 (S.D.N.Y. Jan. 27, 2006) (citing *Vermeer Owners, Inc.*, 78 N.Y.2d at 1116). "Moreover, the 'elements of fraud are narrowly defined.'" *Brassco, Inc.*, 2006 WL 223154, at *16 (citing *Gaidon v. Guardian Life Insur. Co.*, 94 N.Y.2d 330, 331 [N.Y. 1999]).

commit fraud.  Such intent or motivation is required to state a claim for fraud.[44]  It should be

remembered that an agent's good-faith reliance on information given to the agent from his or her

principal, and/or good-faith reliance on the advice of counsel, is a defense to a claim that the

agent acted intentionally in committing fraud against a third-party.[45]

       For these reasons, the Court denies Plaintiffs' motion to amend to the extent it seeks

leave to assert a fraud claim against Gioia Gensini.

### 2.     Defendants' Challenge to Plaintiffs' Claims of Breach of Fiduciary Duty

#### a.     Plaintiffs' Claims Against Ena Gensini, Gunilla De Montaigu, and Concha Futura, S.A.

       Defendants argue that Plaintiffs have failed to state a cause of action for breach of

fiduciary duty.  More specifically, Defendants argue that they have not breached any fiduciary

duty to Plaintiffs because they do no owe Plaintiffs a fiduciary duty.  In response, Plaintiffs

---

[44]     *See, e.g., Wecare Holdings, LLC v. Bedminster Intern. Ltd.*, 08-CV-6213, 2009 WL 604877, at *9 (W.D.N.Y. Mar. 9, 2009) (noting that intent to deceive is an element of fraudulent inducement) (citation omitted); *Batlle v. Associates For Women's Medicine, PLLC*, 05-CV-8373, 2006 WL 2642137, at *5 (S.D.N.Y. Sept. 15, 2006) (the plaintiff has the burden of alleging "facts that give rise to a strong inference of fraudulent intent") (citation omitted).

[45]     *See* 2A C.J.S. *Agency: Fraud and Misrepresentation* § 376 (2008) ("An agent who makes untrue statements based on information given to the agent by the principal is not liable because of the fact that the principal knew the information to be untrue; rather, an agent may properly rely on the statements of the principal to the same extent as on the statements from any other similarly reputable source.") (citation omitted); 2A N.Y. Jur.2d *Agency and Independent Contractors: Liability for Torts* § 342 (2008) ("[A]n agent is not personally liable for false representations made on behalf of the principal as long as they were innocently made.") (citation omitted); *Buy This, Inc. v. MCI Worldcom Communc'ns, Inc.*, 209 F. Supp.2d 334, 343 (S.D.N.Y. 2002) ("[The good-faith-reliance-on-counsel] defense has heretofore only been recognized in the securities fraud context. . . .  In other types of cases, such reliance on counsel can nevertheless defeat the scienter element of a fraud claim.") (citations omitted); *cf. Oxyn Telecommunc'ns, Inc. v. Onse Telecom*, 01-CV-1012, 2003 WL 660848, at *6 (S.D.N.Y. Feb. 27, 2003) (implicitly recognizing that defendant could have, but did not, assert "reliance on advice of counsel as a defense" to claim of fraud).

argue that they sufficiently stated a claim for breach of fiduciary duty. More specifically, Plaintiffs argue that, because Concha Futura, S.A., is a closely held corporation, all shareholders owe each other the highest degree of fidelity and good faith. Plaintiffs further argue that this duty requires that all shareholders avoid self-dealing, as well as situations in which a fiduciary's personal interests conflict with the interests of those owed a fiduciary duty.

"Shareholders in a close corporation owe each other a duty to act in good faith." *Patti v. Fusco*, No. 10717-05, 2005 WL 3372976, at *2 (N.Y. Sup. Ct., Nassau County 2005) (citing *Matter of Cassata v. Brewster-Allen-Wichert, Inc.*, 248 A.D.2d 710 [N.Y. App. Div., 2nd Dept. 1998]). "The relationship of such shareholders is a fiduciary one." *Fusco*, 2005 WL 3372976, at *2 (citing *Brunetti v. Musallam*, 11 A.D.3d 280 [N.Y. App. Div., 1st Dept. 2004]) [other citation omitted].

More specifically, it "is the fiduciary duty owed by . . . majority shareholder[s] in a closely held corporation to a minority shareholder, not to engage in oppressive actions toward minority shareholders." *McCagg v. Schulte Roth & Zabel LLP*, No. 601566/04, 2008 WL 4065920, at *8 (N.Y. Sup. Ct., New York County 2008); *see also In re Dissolution of Upstate Medical Assoc. P.C.*, 739 N.Y.S.2d 766, 767 (N.Y. App. Div., 3rd Dept. 2002). "Although the term 'oppressive actions' is not statutorily defined, the Court of Appeals has held that 'oppression should be deemed to arise when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the petitioner's decision to join the venture." *In re Dissolution of Upstate Medical Assoc. P.C.*, 739 N.Y.S.2d at 767 (citing *Matter of Kemp & Beatley, Inc.*, 64 N.Y.2d 63, 73 [N.Y. 1984] ["A shareholder who reasonably expected that ownership in the corporation would

entitle him or her to . . . a share of corporate earnings, . . . , or some other form of security, would be oppressed in a very real sense when others in the corporation seek to defeat those expectations and there exists no effective means of salvaging the investment."]).

In addition, "[c]orporate directors and controlling shareholders of close corporations . . . are held 'to the extreme measure of candor, unselfishness and good faith.'"  *Harger v. Price*, 204 F. Supp.2d 699, 707 (S.D.N.Y. 2002) (citing *Kavanaugh v. Kavanaugh*, 226 N.Y. 185, 193 [1919]).  "They may not act 'for the aggrandizement or undue advantage of the fiduciar[ies] to the exclusion or detriment of the shareholders.'"  *Harger*, 204 F. Supp.2d at 707 (citing *Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 559 [1984]).  "Surely they may not act if the sole purpose is reduction of the number of profit sharers, or ultimately to increase the individual wealth of the remaining shareholders." *Id.* (citations and internal quotations omitted).

Among the exhibits that Plaintiffs have submitted to support their allegations, one exhibit plausibly suggests that Concha Futura, S.A., was set up by two people (Geoffredo Gensini and Walter Rusyniak), and had only four shareholders in 1981.  (Dkt. No. 41, Part 10, at 3-5, 16-17.) This plausibly suggests that Concha Futura, S.A., is a close corporation.  *See, e.g., Shorell Labs., Inc. v. H. Allen Lightman, Inc.*, 264 N.Y.S.2d 829, 832 (N.Y. App. Div., 1st Dept. 1965) (a company that has only four shareholders is a close corporation).  The exhibits also plausibly suggest that, as a result of Defendants Ena Gensini and Gunila De Montaigu annulling Walter Rusyniak's interest in the company, they increased their interest in the company by the percentage that Mr. Rusyniak forfeited (25%).  (Dkt. No. 41, Part 10, at 26-29.)[46]  Moreover, the

---

[46]        The Court is mindful of the fact that these two Defendants also terminated the interest of Shareholder 4, which further increased their interest by twenty-five percent (25%). However, this issue is not relevant to the instant action.

proposed Second Amended Complaint and exhibits plausibly suggest that, by terminating Mr.

Rusyniak's interest in Concha Futura, Mr. Rusyniak was oppressed of his share of the corporate

earnings (because he did not receive any of the profits from the sale of the two parcels of land).[47]

For these reasons, the Court denies Defendants' motion to dismiss to the extent that it is underlined
premised on this ground.

### b.    Plaintiffs' Claim Against Gioia Gensini

Although Plaintiffs do not assert a claim of breach of fiduciary duty against Gioia

Gensini in their fourth cause of action against Defendants for breach of fiduciary duty, under ¶

116(4) (the "Wherefore" section of Plaintiffs' proposed Second Amended Complaint), Plaintiffs

request damages for breach of fiduciary duty against all Defendants, including Gioia Gensini.

(Dkt. No. 41, Part 9, ¶ 116.)  Essentially, Plaintiffs argue that Gioia Gensini owed a fiduciary

duty to Plaintiffs due to the fact that (1) her principle, Ena Paola Gensini, owed a fiduciary duty

to Plaintiffs, and/or (2) Gioia's Power of Attorney over Ena Paola Gensini's banking authorized

Gioia Gensini to represent Ena Paola Gensini's interest in Concha Futura, S.A.

However, as discussed above in Part III.D.1.b of this Decision and Order, Plaintiffs have

not cited (and the Court is not aware of) any cases that stand for the proposition that a person

holding a Power of Attorney has a heightened legal duty to a third party simply because his or

her principal has a heightened legal duty to a third party.  In addition, the Court notes that, the

existence of such cases would be difficult to imagine, given that an agent owes a fiduciary duty

to his or her principal, and the interests of the principal may not always align with the interest of

those to whom the principal owes a fiduciary duty.

---

[47]    Whether or not this termination was permissible and/or proper is a matter that
cannot be decided by the Court at this stage of the proceeding.

For these reasons, the Court denies Plaintiffs' motion to amend to the extent it seeks leave to assert a breach-of-fiduciary-duty claim against Gioia Gensini.

### 3.     Defendants' Challenge to Plaintiffs' Claims of Civil Conspiracy

#### a.     Plaintiffs' Claims Against Ena Gensini, Gunilla De Montaigu, and Concha Futura, S.A.

Defendants argue that New York does not recognize a cause of action for civil conspiracy. More specifically, Defendants argue that a conspiracy to commit a tort is never itself a cause of action. Therefore, Defendants argue that, to the extent that the object of the conspiracy is the same tort (e.g., fraud, etc.) as Plaintiffs have also asserted against Defendants, this claim of civil conspiracy must be dismissed as duplicative. In response, Plaintiffs argue that they sufficiently stated a claim for civil conspiracy under New York law. More specifically, Plaintiffs argue that, contrary to Defendants' argument, New York law recognizes a claim for civil conspiracy where "there is evidence of an underlying actionable tort." (Dkt. No. 41, Part 16, at 30 [citing *Fagan v. First Security Investments, Inc*., 04-CV-1021, 2006 WL 2671044, at *4 (S.D.N.Y. Sept. 15, 2006)]).

"The elements of a civil conspiracy are (1) an agreement between two or more persons, (2) an overt act, (3) intentional participation in the furtherance of a plan or purpose and (4) resulting damage." *Fagan*, 2006 WL 2671044, at *4 (citing *Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp*., 00-CV-8688, 2002 WL 362794, at *13 [S.D.N.Y. Mar. 6, 2002]). In addition, under New York Law, "the substantive [or independent] tort of civil conspiracy . . . is available 'only if there is evidence of an underlying actionable tort,'" which was the object of the conspiracy. *Id*. (citing *Missigman v. USI Northeast, Inc*., 131 F. Supp.2d 495, 517 [S.D.N.Y. 2001]).

Plaintiffs have alleged that Defendants knowingly agreed to defraud Plaintiff Walter Rusyniak of his interests in Concha Futura, S.A., by purposefully not notifying him of shareholders meetings, and by annulling his interest in the company unbeknownst to him. Plaintiffs have further alleged that email messages were sent between Defendants and other interested parties, and that telephone conversations occurred between Defendants and other interested parties. Finally, Plaintiffs have alleged that these communications demonstrate a plan or agreement to sell Concha Futura assets without involving or compensating Plaintiffs.

The Court finds that the alleged email messages, telephone calls and meetings collectively constitute a sufficient pleading of an agreement between two or more people to sell Concha Futura assets without notifying or compensating Plaintiffs. The Court also finds that the alleged meetings, as well as the alleged sale of the assets, constitute a sufficient pleading of an overt act in furtherance of this agreement. The Court further finds that the alleged email messages, telephone calls, meetings and sale of assets collectively constitute a sufficient pleading of intentional participation on the part of Defendants Ena Gensini and Gunila De Montaigu, as well as resulting damages. Finally, the Court finds that Plaintiffs have sufficiently alleged an underlying actionable tort that was the object of the alleged conspiracy, namely, fraud, breach of fiduciary duty and/or violation of Panamanian corporate law.

For these reasons, the Court denies Defendants' motion to dismiss to the extent it seeks the dismissal of Plaintiffs' civil conspiracy claims against Defendants Ena Gensini and Gunila De Montaigu at this time.

### b.     Plaintiffs' Claims Against Gioia Gensini

Plaintiffs also seek to amend their Amended Complaint to add Gioia Gensini as a party

defendant, and specifically assert a claim of civil conspiracy against her (in addition to a claim of

fraud and breach of fiduciary duty). After carefully considering the matter, the Court finds that

Plaintiffs have failed to properly plead a claim of civil conspiracy against Gioia Gensini for two

reasons.

First, as explained above in Part III.D.3.a. of this Decision and Order, New York law

does not recognize the independent tort of civil conspiracy. To the extent that Plaintiffs argue

that the underlying actionable tort that was the object of the alleged conspiracy by Gioia Gensini

was a fraud or breach of fiduciary duty committed *by her*, Plaintiffs' argument fails. This is

because, the Court has already found that Plaintiffs have failed to allege facts plausibly

suggesting the existence of the elements of a claim of breach of fiduciary duty or fraud against

Gioia Gensini. *See, supra*, Parts III.D.1.b and III.D.2.b of this Decision and Order. *See also*

*Fezzani v. Bear, Stearns & Co. Inc.*, 592 F. Supp.2d 410, 430-31 (S.D.N.Y. Sept. 23, 2008)

("The conclusory allegations that Defendants 'authorized numerous parking transactions' and

'creat[ed] a false appearance of an active trading market with the intent of inflating the trading

price of the [securities]' are insufficient" to withstand a motion to dismiss for failure to state a

claim for civil conspiracy).

Second, to the extent that Plaintiffs argue that the underlying actionable tort that was the

object of the alleged conspiracy by Gioia Gensini was a fraud, breach of fiduciary duty, or

breach of Panamanian law committed *by the other Defendants*, Plaintiffs' argument also fails.

This is because Plaintiffs have failed to allege facts plausibly suggesting that there was any

agreement, or culpable behavior, on the part of Gioia Gensini to participate in such third-party

torts. *See Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs.*, 515 F. Supp.2d 298, 318

(N.D.N.Y. 2007) (Kahn, J.) ("[M]ore than a conclusory allegation of conspiracy or common

purpose is required to state a cause of action against a nonactor, who must have allegedly

engaged in some 'independent culpable behavior.'") (citations omitted).[48]  Rather, Plaintiffs have

only alleged, in a conclusory manner, that Gioia Gensini "intentionally exercised" her Power of

Attorney "to the benefit of her mother and the other defendants and to the detriment of

plaintiffs."  (Dkt. No. 41, Part 9, at 10.)  What is conspicuously lacking from Plaintiffs'

pleadings is any factual allegation plausibly suggesting that Gioia Gensini participated in (1) any

of the shareholder meetings, (2) the annulment of Mr. Rusyniak's legal interest in the company,

or (3) the underlying decision to sell the company's assets.[49]

     For these reasons, the Court denies Plaintiff's motion to amend to the extent that it

requests leave to add a civil conspiracy claim against Gioia Gensini.[50]

---

[48]     *See also Harold F. Shepherd Real Estate, Inc. v. Gibbs*, 565 N.Y.S.2d 182, 182
(N.Y. App. Div., 2nd Dept. 1991) (dismissing the plaintiff's civil conspiracy claim against
appellants because "the plaintiff failed to set forth any specific acts on the appellants' part which
make out participation by them in an actionable tort") (citations omitted).

[49]     As previously noted by the Court, at the time Gioia Gensini accepted Alberto
Tile's legal advice on May 8, 2006, Gioia Gensini's principal, Ena Paola Gensini, had already
agreed to sell the Concha Futura N.A., assets; and Plaintiffs have not alleged facts plausibly
suggesting that Gioia Gensini participated in that underlying agreement to sell the Concha Futura
N.A., assets.

[50]     The Court notes that, if Plaintiffs were permitted to amend their Amended
Complaint so as to assert a claim against Gioia Gensini (a New York State resident), then
"complete diversity" between the parties, as required by 28 U.S.C. § 1332 and *Strawbridge v.
Curtiss*, 2 L.Ed. 435 (1806), would be destroyed.  *See, e.g.*, *Goodman v. Polyvinyl Films, Inc.*,
95-CV-3365, 1999 WL 33030, at *1 (S.D.N.Y. Jan. 21, 1999) (dismissing amended complaint
based on lack of subject-matter jurisdiction, because, by adding defendants that were citizens of
same state as were plaintiffs, amended complaint destroyed complete diversity between parties).
As a result, unless the Court were to dismiss Gioia Gensini as an indispensible party to the action
under Fed. R. Civ. P. 19 and 21, the Court would lose subject-matter jurisdiction over the action,
and would have to remand the action back to state court.  *See* 28 U.S.C. § 1332(a)(3) ("The
district courts shall have original jurisdiction of all civil actions where the amount in controversy

    **4.**      **Defendants' Challenge to All of Plaintiffs' Claims Based on Lack of Personal Jurisdiction**

Defendant Ena Gensini is a resident of Panama who owns property (a residence) in the state New York.[51] Defendant Gunila De Montaigu is a resident of France. Defendant Concha Futura, S.A., is a corporation that exists under the laws of Panama, whose place of business is also Panama. Defendants argue that, as non-domiciliaries of New York State who do not maintain sufficient contacts with the State, the Court lacks personal jurisdiction over them. In response, Plaintiffs argue that the Court has jurisdiction over Defendants under New York's long-arm statute. *See* N.Y. C.P.L.R. § 302(a).

N.Y. C.P.L.R. § 302(a) provides, in pertinent part, that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods

---

exceeds the sum of $75,000, exclusive of interest and costs, and is between . . . *citizens of different States* and in which citizens or subjects of a foreign state are additional parties . . . .") [emphasis added]; *Bank of New York v. Bank of America*, 861 F. Supp. 225, 228 (S.D.N.Y. 1994) ("[W]here there are citizens and aliens on both sides of a case, jurisdiction exists under § 1332(a)(3) *so long as there is complete diversity among the citizen parties* and the citizen parties are legitimately involved in the underlying controversy and not present merely to establish federal jurisdiction.") (emphasis added) (collecting cases).

    [51]      Defendant Ena Gensini lived in Manlius, New York until January of 2006.

used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect

the act to have consequences in the state and derives substantial revenue from interstate or

international commerce; or (4) owns, uses or possesses any real property situated within the

state." N.Y. C.P.L.R. § 302(a).

Plaintiffs allege that Defendants Ena Gensini and Gunila De Montaigu, while acting as

members of the Board of Directors of Concha Futura, S.A., attended Board meetings in the state

of New York on at least two separate occasions. Plaintiffs further allege that Defendants

breached their fiduciary duties owed to Plaintiffs and committed other tortious acts during these

meetings. After carefully considering the matter, the Court finds that these allegations are

sufficient to defeat a motion to dismiss for lack of personal jurisdiction. *See, e.g.*, *N.F.L. Ins.*

*Ltd. By Lines v. B&B Holdings, Inc*., 91-CV-8580, 1993 WL 78090, at *9 (S.D.N.Y. Mar. 18,

1993) (finding that Plaintiff's allegation that "directors held meetings in New York and that they

breached their fiduciary duties to the corporation at these meetings . . . constitute[d] prima facie

evidence of personal jurisdiction over the individual defendants."); *see also Farber v. Zenith*

*Laboratories, Inc*., 777 F. Supp. 244, 245-47 (S.D.N.Y. 1991) (when an out-of-state corporation

holds a majority of its board meetings in New York, New York federal courts have personal

jurisdiction over the corporation).

For these reasons, the Court denies Defendants' motion to dismiss to the extent that it is

premised on this ground.

### 5. Defendants' Challenge to All of Plaintiffs' Claims Based on Doctrine of Forum Non Conveniens

Defendants argue that dismissal under the forum non conveniens doctrine is appropriate

because New York State has no interest in the adjudication of this dispute, given that it arises

under Panamanian corporate Law.  In response, Plaintiffs argue that, because deference must be given to a plaintiff's choice of forum, and because Panama does not provide an adequate alternative forum,[52] the Northern District of New York is the proper forum.

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  "Although district courts enjoy broad discretion in applying this principle," the Second Circuit has "outlined a three-step process to guide the exercise of that discretion."  *Norex Petroleum Ltd. v. Access Industries, Inc*., 416 F.3d 146, 153 (2d Cir. 2005) (citation omitted).  First, "a court determines the degree of deference properly accorded the plaintiff's choice of forum." *Access Industries, Inc*., 416 F.3d at 153 (citation omitted).  Second, "it [must] consider[] whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id*. (citation omitted).  "Finally, . . . a court balances the private and public interests implicated in the choice of forum." *Id*. (citation omitted).

"To prevail on a motion to dismiss based on forum non conveniens, a defendant must demonstrate that an adequate alternative forum exists and that, considering the relevant private and public interest factors . . . , the balance of convenience tilts strongly in favor of trial in the foreign forum." *Seales v. Panamanian Aviation Co. Ltd*., 07-CV-2901, 2008 WL 544705, at *2 (E.D.N.Y. Feb. 26, 2008) (citing *R. Maganlal & Co. v. M.G. Chemical Co., Inc*., 942 F.2d 164, 167 [2d Cir. 1991].  "For this reason, courts sometimes begin their forum non conveniens analysis with this factor." *Access Industries, Inc*., 416 F.3d at 157.

---

[52]     Plaintiffs implicitly concede that their action would be time-barred in Panama. (Dkt. No. 41, Part 16, at 22.)

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citation omitted). When there is a possibility that even one count in an action would be barred by a foreign sovereign's statute of limitations, the foreign sovereign is an inadequate alternative forum, and therefore dismissal on forum non conveniens grounds is improper. *See, e.g.*, *Crimson Semiconductor, Inc. v. Electronum*, 629 F. Supp. 903, 908-09 (S.D.N.Y. 1986). Because Defendants have implicitly conceded that Plaintiffs' claims would be barred in Panama as untimely, Defendants have failed to satisfy their burden of demonstrating that an adequate alternative forum exists.

For these reasons, the Court denies Defendants' motion to dismiss to the extent that it is premised on this ground.

### 6.    Defendants' Challenge to All of Plaintiffs' Claims Based on Lack of Standing

Defendants argue that Plaintiffs lack standing to bring the instant action because, based on Defendants' interpretation of Plaintiffs' allegations, Plaintiff Walter Rusyniak improperly disposed of his entire interest in Concha Futura, S.A., to his son at an unstated date, on unstated terms. Defendants argue that this disposal nullifies standing for both Plaintiffs because, (1) upon Walter Rusyniak's transfer of his interest, he lost standing to sue, and (2) the transfer does not comply with Concha Futura's bylaws, which requires that shares be offered to the corporation before being transferred,[53] and therefore Plaintiff Anthony Rusyniak does not have any interest

---

[53]    As Defendants recognize, there is a mechanism in the Corporate Bylaws by which inter-family transfers can occur in the event of death, or physical or mental disability. However, Defendants contend that because the Amended Complaint contains no allegation of a physical or mental disability of Walter Rusyniak, any transfer to Anthony Rusyniak was improper.

in Concha Futura, S.A.

In response, Plaintiffs argue that, in their Amended Complaint, paragraph "12" alleges that "Plaintiff Anthony Rusyniak . . . became the owner of Walter Rusyniak's interests in Concha Futura, S.A., through a transfer in accordance with provision three (3) of the [Company] Agreement." (Dkt. No. 16, Part 1, at 3.) Plaintiffs further argue that Provision Three (3) of the Company Agreement governs inter-family transfers of shares.

As noted in footnote 21 of this Decision and Order, Provision Three (3) of the Company Agreement states that, "[i]n the case of death, physical or mental disability of a member, the shares will be transferred exclusively to the member's spouse or children." (Dkt. No. 41, Part 10, at 17.) Because Plaintiffs allege in both their Amended Complaint and in their proposed Second Amended Complaint that the shares were transferred pursuant to this provision, the Court concludes that Plaintiffs have sufficiently pled that the transfer of interest in Concha Futura, S.A., was proper.

For these reasons, the Court denies Defendants' motion to dismiss to the extent that it is premised on this ground.

### 7. Defendants' Challenge to All of Plaintiffs' Claims Based on the Statute of Limitations

Defendants argue that the statute of limitations is a complete defense to Plaintiffs' causes of action. (Dkt. No. 24, Part 5, at 16.) Specifically, Defendants argue that the statute of limitations began running from the date of the January 8, 1997, shareholders meeting in Panama because Panamanian law required Defendants to register the minutes of their meeting with the Public Registry of the Republic of Panama. (*Id.*) Essentially, Defendants' argument is that, because Panamanian law deems registration of the minutes as providing notice to all third parties

of the existence of the meeting, Plaintiffs were aware, or should have been aware, that

Defendants conducted this meeting.  (*Id*.)  Defendants further argue that "because the alleged

wrong occurred on January 8, 1997, Plaintiffs claims, if any, were required to be brought no later

than January 7, 2003."  (*Id*. at 17.)  In addition, Defendants argue that the two (2) year discovery

toll for fraud claims under C.P.L.R. §§ 203(g) and 213(8) does not help Plaintiffs "because

Plaintiffs have pleaded that they could (and actually did) have access to the information about

their claims based on Panamanian public records."  (*Id*.)

In response, Plaintiffs argue (1) that the two (2) year discovery toll for fraud claims

applies to their fraud claims because they were not aware, nor did they have any reason to be

aware, of the early 1996 and January 1997 meetings, and (2) that the rest of their claims are

governed by a six year statute of limitations, which accrues from the June 2005 meeting in

Syracuse, New York.  (Dkt. No. 41, Part 16, at 25-26.)

### a.        Claim of Violation of Panamanian Corporate Law

In their proposed Second Amended Complaint, Plaintiffs allege that, "[u]pon information

and belief, Panamanian law dictates that a formal proceeding be held prior to a declaration of

forfeiture and annulment of shares, allowing the accused shareholder notice of the impending

forfeiture, and the opportunity to be heard so that the accusations may be rebutted."  Plaintiffs

further allege that, "[u]pon information and belief, Defendants violated this law in that no such

proceeding has ever taken place regarding the annulment of Plaintiff Walter Rusyniak's shares."

Defendants argue that Plaintiffs' claims that arise under Panamanian corporate law are

barred by the statute of limitations under either New York or Panama law given that the cause of

action accrued on January 8, 1997.

"In actions where the rights of the parties are grounded upon the law of jurisdictions other than the forum, it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law, but will follow its own rules of procedure." *Bournias v. Atlantic Maritime Co*., 220 F.2d 152, 154 (2d Cir. 1955) (citing *Restatement of Conflict of Laws* § 585; Beale, Conflict of Laws § 584.1 (1935); Stumberg, *Conflict of Laws* 134 *et seq*. [2d Ed. 1951]). "While it might be desirable, in order to eliminate 'forum-shopping,' for the forum to apply the entire foreign law, substantive and procedural–or at least as much of the procedural law as might significantly affect the choice of forum, it has been recognized that to do so involves an unreasonable burden on the judicial machinery of the forum . . ., and perhaps more significantly, on the local lawyers involved." *Bournias*, 220 F.2d at 154 (citation omitted). "Consequently, for at least some questions[,] the law applied is that of the forum, with which the lawyers and judges are more familiar, and which can be administered more conveniently." *Id*.

"The general rule appears established that for the purpose of deciding whether to apply local law or foreign law, statutes of limitations are classified as 'procedural.'" *Id*. (citing Stumberg, *Conflict of Laws* 147 (1951); Lorenzen, *Statutes of Limitation and the Conflict of Laws*, 28 *Yale L.J.* 492 [1919]). "Hence the law of the forum controls." *Id*. (citations omitted). "This rule has been criticized . . . [because] the foreign statute, unlike evidentiary and procedural details, is generally readily discovered and applied, and a difference in periods of limitation would often be expected to influence the choice of forum." *Id*. (citations omitted). Nonetheless, "this general rule is firmly embedded in our law." *Id*.

"But as might be expected, some legislatures and courts, perhaps recognizing that in light of the rationale of the underlying conflict-of-laws doctrine it is anomalous to classify

45

across-the-board statutes of limitation as 'procedural,' have created exceptions to the rule so categorizing such statutes." *Id*. at 155. "A court-made exception, and the one with which we are concerned here, is that where the foreign statute of limitations is regarded as barring the foreign right sued upon, and not merely the remedy, it will be treated as conditioning that right and will be enforced by our courts as part of the foreign 'substantive' law." *Id*. (citation omitted); *Whisenhunt v. Sylvania Corp*., 671 F. Supp. 214, 216 (W.D.N.Y. 1987) ("An exception to this general rule exists when the right sued upon was created by a foreign statute under which the commencement of an action within a specified period is a condition precedent to securing relief.").

Here, while the right sued upon was allegedly created by Panamanian corporate law, it is unclear from the proposed Second Amended Complaint what the precise nature or source of this corporate law is. (Dkt. No. 41, Part 9, ¶¶ 59-67 [Plfs.' Proposed Second Am. Compl.].) However, Defendants offer the declaration of Panamanian corporate attorney Alberto Tile, who swears that the law is statutory in nature, being set forth in Article 418 of the Commercial Code of the Republic of Panama. (Dkt. No. 34, ¶ 7 [Revised Decl. of Alberto Tile].) Attorney Tile swears also that, in order to recover based on a party's violation of Article 418 of the Commercial Code of the Republic of Panama, the action must be commenced within a specified time period. (*Id*. at ¶ 7.) As a result, the Court will assume, for the purpose of deciding the motions currently before the Court, that the right sued upon was created by a Panamanian statute under which the commencement of an action within a specified period is a condition precedent to securing relief.

"[W]hen the allegations of the complaint make clear that the claim is barred by the

limitations period, the plaintiff has the burden of establishing a basis to toll the applicable statute." *Eickhorst v. E.F. Hutton Group, Inc*., 763 F. Supp. 1196, 1202 (S.D.N.Y. 1990). Otherwise, the statute of limitations is "an affirmative defense on which the defendant has the burden of proof." *Bano v. Union Carbide Corp*., 361 F.3d 696, 710 (2d Cir. 2004). "The defendant's normal burden includes showing when the cause of action accrued." *Bano*, 361 F.3d at 710. After carefully considering the matter, the Court finds that, because Defendants have not provided the Court with a certified translation of the relevant portion of Panamanian law (purported to be Article 1652 of the Commercial Code of the Republic of Panama), Defendants have not met their burden of showing cause for dismissal of this claim, at this time.[54]

For these reasons, the Court denies Defendants' motion to dismiss without prejudice to the extent that it is premised on this ground.

### b.    Claim of Breach of Contract

"In New York, the statute of limitations for breach of contract requires that the action accrues at the time of breach and must be commenced within six years of it." *Chase v. Columbia Nat. Corp*., 832 F. Supp. 654, 659 (S.D.N.Y. 1993) (citing N.Y. C.P.L.R. § 213[2]). In addition, "it is well settled that [under New York law] the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered." *ABB Indus. Sys., Inc. v. Prime Tech., Inc*., 120

---

[54]    *See Aboushanab v. Janay*, 06-CV-13472, 2007 WL 2789511, at *5 (S.D.N.Y. Sept. 26, 2007) (denying defendants' motion to dismiss plaintiffs' breach of contract claims on ground of untimeliness because defendants "failed to provide the Court with an English-language translation of the relevant portion of the Egyptian Civil Code, or other proofs"); *cf. In re Osman*, 07-MC-0024S, 2007 WL 1480966, at *2 (W.D.N.Y. May 20, 2007) (denying "Petitioner's request [that the Court correct the date of birth listed on his Certificate of Naturalization] without prejudice to provide Petitioner the opportunity to . . . obtain a translation of the purported birth record").

F.3d 351, 360 (2d Cir. 1997).

The Court finds that, based on Plaintiffs' own factual allegations, the contract that governed the dealings between Defendants and Plaintiffs was amended in 1997 to (1) terminate Mr. Rusyniak's interest in the company, and (2) allow the Board of Directors, by agreement made in any session, to sell all or most of Concha Futura's properties and assets, under terms and conditions that the Board deems convenient, if the sale is authorized by sixty (60) percent of the voting shares. Therefore, it was on this date that contract was allegedly breached.[55] As a result, any breach-of-contract claim asserted by Plaintiffs arises solely from events occurring during or before the 1997 amendment to the contract.

For these reasons, the Court dismisses Plaintiff's claim for breach of contract.

### c.    Claim of Breach of Fiduciary Duty

"Unfortunately, New York law does not provide any single limitations period for breach of fiduciary duty claims." *In re Argo Commc'ns Corp.*, 134 B.R. 776, 787 (S.D.N.Y. 1991) "The choice of the appropriate period ordinarily depends on the substantive remedy sought by the plaintiff." *In re Argo Commc'ns Corp.*, 134 B.R. at 787 (Bankr. S.D.N.Y. 1991) (citing *Leonard v. Santa Fe Industries, Inc.*, 70 N.Y.2d 262, 266, 519 N.Y.S.2d 801, 803 [N.Y. 1987]). "In its determination of what limitations period applies, a Court should 'look for the reality and essence of the action and not its mere name.'" *Id.* (citing *Tighe v. Ginsberg*, 540 N.Y.S.2d 99, 100 [N.Y. App. Div., 4th Dept. 1989]). "Similarly, the nature of the offense, not the means of asserting it, controls for statute of limitations purposes." *Id.* (citation omitted).

---

[55]    The Court notes that the action of selling the Concha Futura assets in 2006 does not amount to a breach of contract, because it is the language that authorizes Defendants to sell the property that gives rise to the alleged breach, and this language was included in the Corporate Agreement in January 1997.

"Although conflicting authority exists, numerous New York Courts have applied the six-year limitations periods to breach of fiduciary duty claims." *Id*. (collecting cases).[56]  In addition, "numerous New York Courts have held that the statute of limitations for breach of fiduciary duty does not commence running until the plaintiff has actual or constructive knowledge of the breach." *Id*. (collecting cases).[57]

After carefully considering the matter, the Court finds that Plaintiffs' claim of breach of fiduciary duty is based on fraud.  Moreover, this claim is not barred by the statute of limitations, even assuming that the Court were to apply the three-year statute of limitations, because Plaintiffs are requesting money damages.  This is because, based on Plaintiffs' factual allegations, their claim was brought within three years of the date when they became aware of Defendants' actions.

For these reasons, the Court denies Defendants' motion to dismiss to the extent that it is

---

[56]        *See also Loengard v. Santa Fe Indus*., 519 N.Y.S.2d 801, 804 (N.Y. 1987); *Provident Life and Cas. Ins. Co. v. Ginther*, 96-CV-0315, 1997 WL 9779, at *2 (W.D.N.Y. Jan. 3, 1997) (noting that "when a fiduciary duty claim derives from or has its genesis in the parties' contractual relationship or includes allegations of fraud, courts have applied New York's six-year limitations period and, when appropriate, have applied New York's discovery rule."); *cf. Yatter v. William Morris Agency, Inc*., 256 A.D.2d 260, 261 (N.Y. App. Div., 1st Dept. 1998) ("Because plaintiff's breach of fiduciary duty claim seeks only money damages, the applicable limitations period is three years."); *Glonti v. Stevenson*, 08-CV-8960, 2009 WL 311293, at *6 (S.D.N.Y. Feb. 6, 2009) ("Under New York law, the statute of limitations for breach of fiduciary duty claims where (as here) money damages are sought is three years"); *Kaufman v. Cohen*, 307 A.D.2d 113 (N.Y. App. Div., 1st Dept. 2003).

[57]        *See also Dymm v. Cahill*, 730 F. Supp. 1245, 1264 & n.7 (S.D.N.Y. 1990); *Menke v. Glass*, 898 F. Supp. 227, 232 (S.D.N.Y. 1995); *Ginther*, 1997 WL 9779, at *2; *cf. Dignelli v. Berman*, 293 A.D.2d 565, 566 (N.Y. App. Div., 2nd Dept. 2002) (when a claim of breach of a fiduciary duty is brought, "[t]here is no basis as a matter of law to impose a discovery accrual rule in the absence of any allegations of fraud."); *King v. Fox*, 28 F. App'x. 95, 99 (2d Cir. Jan. 29, 2002) ("A claim for breach of fiduciary duty based on fraud does not accrue until the plaintiff's actual or constructive discovery of the facts constituting the fraud") (citation omitted).

premised on this ground

### d.    Claim of Fraud

As discussed above in Part III.D.1.a. of this Decision and Order, it would be improper to conclude at this point, based on the pleadings, that the two-year discovery rule does not apply to Plaintiffs fraud claim.  In addition, the Court finds, as it did above in Part III.D.1.a. of this Decision and Order, that, contrary to Defendants' argument, it would be improper to conclude based on the pleadings that Plaintiffs should have known of the alleged fraud soon after the January 1997 meeting simply because the existence of the meeting was published in a Panamanian registry.

When there is a claim of fraud, "[f]or the purpose of determining when the statute of limitations begins to run, the absence of conclusive evidence of actual knowledge is only the beginning of the inquiry, since the statutory period does not await 'the leisurely discovery of the full details of the alleged scheme.'"  *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp.2d 250, 258 (S.D.N.Y. 2005) (citing *Klein v. Bower*, 421 F.2d 338, 343 [2d Cir. 1970]).  "Knowledge will be imputed to a plaintiff claiming fraud if, with reasonable diligence, plaintiff could have discovered the fraud prior to its actual discovery."  *Topps Co., Inc.*, 380 F. Supp.2d at 258 (citing N.Y. C.P.L.R. § 213[8]).  "The test employed by the courts to determine whether the fraud should have been discovered is an objective one."  *Id*. (collecting cases).

"There is no general rule as to the number or nature of facts which should trigger such an investigation."  *Id*.  "Rather, each case presents a universe of unique facts which must be evaluated in order to determine whether the alleged fraud should have been discovered."  *Id*. (citation omitted).  "Issues of due diligence and constructive knowledge depend on inferences

drawn from the facts of each particular case. . . ."  *Id.* (citation omitted).

In their proposed Second Amended Complaint, Plaintiffs allege that they did not become aware of Defendants' actions until May 2006, when Plaintiff Anthony Rusyniak traveled to Panama to investigate the status of Concha Futura, S.A.  Plaintiffs further allege that they had no cause to believe that the status of the corporation had changed since 1995 (when they last performed due diligence) because Plaintiff Walter Rusyniak was the President of the company as well as its spokesperson.[58]  When viewed in its entirety, it would be improper for the Court to conclude at this stage of the proceedings that due diligence required Plaintiffs to regularly investigate the status of an idle company, whose activity arguably required participation by its President.

For these reasons, the Court denies Defendants' motion to dismiss to the extent it attacks Plaintiffs' fraud claim as barred by the statute of limitations.

### e.    Claim of Civil Conspiracy

"The statute of limitations for civil conspiracy is the same as that for the underlying tort." *Brady v. Lynes*, 05-CV-6540, 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008) (citing *Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 [N.Y. App. Div., 2nd Dept. 1989]); *see also Scholes v. Am. Kennel Club, Inc.*, 98-CV-6538, 1999 WL 799532, at *6 (S.D.N.Y. Oct. 7, 1999). Here, the underlying tort is fraud (or breach of fiduciary duty).

As a result, for the same reasons that Plaintiffs' fraud claim is not dismissed as time-barred, Plaintiffs' civil conspiracy claim is not dismissed as time-barred.

---

[58]    This allegation is supported by the allegation that the company was not active and there was no communication between shareholders for an extended period of time following the meeting on January 10, 1981.

51

IV.    **CONCLUSION**

Based on the Court's findings and conclusions above, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiffs' cross-motion to amend is granted in part and denied in part.  Plaintiffs are granted leave to file all of the claims asserted in their proposed Second Amended Complaint *except* the following claims: (1) their breach of contract claim against Defendants; (2) their fraud claim as it relates to telephone and/or email correspondence against Defendants Ena Gensini, Gunila De Montaigu and Concha Futura, S.A.; (3) all fraud claims against Gioia Gensini; (4) all breach of fiduciary duty claims against Gioia Gensini; and (5) all civil conspiracy claims against Gioia Gensini.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 24) is **GRANTED** in part and **DENIED** in part, as set forth above; and it is further

**ORDERED** that Plaintiffs' cross-motion to amend their Amended Complaint (Dkt. No. 41) is **GRANTED** in part and **DENIED** in part, as set forth above; and it is further

**ORDERED** that, within **FOURTEEN (14) DAYS** of the date of this Decision and Order, on or before May 19, 2009, Plaintiffs shall file, for the review and acceptance of this Court, a signed Third Amended Complaint omitting the stricken claims described above in Part IV of this Decision and Order.

Dated: May 5, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

52