**UNTIED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------

**WALTER RUSYNIAK and ANTHONY RUSYNIAK,**
Civil Action No.
5:07-cv-279 (FJS-GHL)

**Plaintiffs,**

-vs-
**THIRD AMENDED**
**COMPLAINT**

**ENA PAOLA GENSINI, GUNILA De  MONTAIGU,**
**and CONCHA FUTURA, S.A.,**

**Defendants.**
-----------------------------------------------------------

Plaintiffs, Walter Rusyniak and Anthony Rusyniak, by and through their attorneys, Costello,

Cooney & Fearon, PLLC, as and for their Complaint against Defendants Ena Paola Gensini, Gunila

De Montaigu, and Concha Futura, S.A. hereby allege as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by plaintiffs against the defendants for wrongfully

ousting a shareholder without a formal proceeding in violation of Panamanian law, for breaching the

Corporate Bylaws and Shareholder Agreement filed with the Republic of Panama on behalf of

Concha Futura, S.A., for acting in a fraudulent and clandestine manner to declare a forfeiture of

shares and sell off corporate assets without notice or authority, for breach of fiduciary duties owed

to plaintiffs, and for conspiring to defraud plaintiffs.

## SUBJECT MATTER JURISDICTION

2.      Subject matter jurisdiction is conferred on this Court pursuant to 28 United

States Code §1332.

3.      Plaintiffs are residents of Syracuse and Skaneateles, New York, while

defendants, at the time of the initial filing of the original Summons and Complaint, and currently,

are residents of Panama and/or France.

## PERSONAL JURISDICTION

4.      Personal Jurisdiction over the defendants exists pursuant to Section 302 of the New York Civil Practice Law and Rules.

5.      Defendant Ena Gensini owns, uses or possesses real property situated within the state, namely a residence located at 5056 Duigud Road, Manlius New York. Upon information and belief, defendant resided in New York until January of 2006, and specifically, was a resident of the state of New York while engaged in the perpetuation of fraudulent acts and concealment of breaches of fiduciary duties owed to the plaintiff.

6.      Defendants committed tortious acts within the state of New York. Upon information and belief, defendants conspired by telephone and/or mail between New York, Panama, and/or France to fraudulently and wrongfully oust plaintiff Walter Rusyniak from the Corporation he founded by setting up illegal shareholder meetings with no notice to him, stripping him of his shares without any legal right or authority to do so, and intentionally operating to conceal their actions from plaintiffs.

7.      Moreover, defendants held meetings in person in New York City and in Syracuse, New York from 1996 to 2005, wherein they planned and executed the conspiracy and fraudulent scheme to intentionally sell off the assets of Concha Futura, S.A. and to hide the sale from the plaintiffs.

8.      Defendants committed tortious acts without the state of New York, in conjunction with the aforesaid acts within the state of New York,  causing injury to person or property within the state. Upon information and belief, defendants conspired by telephone and/or mail to wrongfully oust plaintiff Walter Rusyniak from the Corporation he founded by setting up

2

illegal shareholder meetings with no notice to him, to sell land owned by Concha Futura, S.A. and to keep the proceeds without legal authority to do so and with the intent to defraud plaintiff Walter Rusyniak, inflicting substantial financial loss.

9.    Defendants surreptitiously met in New York City in 1996 without notice to plaintiff Walter Rusyniak, in an illegal effort to replace plaintiff Walter Rusyniak as the rightful President of Concha Futura, S.A. Defendants never attempted to notify Walter Rusyniak of their illegal actions once the meeting had been concluded.

10.    Defendants surreptitiously met in Panama and voted, without cause, basis or authority, and in violation of the Corporate Bylaws, that plaintiff Walter Rusyniak, President of Concha Futura, S.A., no longer held an interest in the corporation and illegally annulled his shares. Defendants were aware that their actions would deprive plaintiff Walter Rusyniak, a resident of New York, of his shares and position in the Corporation, which owned valuable land ripe for development in the Republic of Panama.

11.    Defendants further entered into a contract to sell the land in question in Panama and thereafter quietly sold that land, with the intent and purpose of depriving plaintiffs of their right to make a claim for the proceeds of the sale of the corporation's assets.

## PARTIES

12.    Plaintiff Walter Rusyniak is an original shareholder and officer of Concha Futura, S.A.

13.    Plaintiff Anthony Rusyniak is the son of Walter Rusyniak, and became the owner of Walter Rusyniak's interests in Concha Futura, S.A. through a transfer in accordance with provision three of the Corporate Agreement.

14.      Defendants Ena Paola Gensini and Gunila De Montaigu are the spouses of two now deceased original shareholders and directors, and are the owners of their respective shares in Concha Futura, S.A.

15.      Concha Futura, S.A. is a corporation organized under the laws of the Republic of Panama on or about May 27, 1980 for the purpose of developing tourism related entities.

## FACTUAL ALLEGATIONS

16.      On or about May 27, 1980, plaintiff Walter Rusyniak, in partnership with Geoffredo Gensini, established a corporation in the Republic of Panama under the name of Concha Futura, S.A. A copy of the translation of the Articles of Incorporation, formed and signed by the shareholders of Concha Futura, S.A., including plaintiff Walter Rusyniak, is attached hereto and made a part hereof as **Exhibit "A"**.

17.      On or about August 6, 1980, Geoffredo Gensini sold two parcels of land located in the Republic of Panama to Concha Futura, S.A. for $37,000.00 U.S.D. in exchange for a 25% ownership interest in Concha Futura, S.A. A copy of the translation of the certificate recording the transaction was filed in the registry books of the Republic of Panama is attached hereto and made a part hereof as **Exhibit "B"**.

18.      On or about August 6, 1980, plaintiff Walter Rusyniak purchased a 25% ownership interest in Concha Futura, S.A. A Certificate of Share Ownership filed in the registry books of the Republic of Panama states that Concha Futura, S.A., received payment in full, and exempted plaintiff from any future obligation. A copy of the translation of said Certificate is attached hereto and made a part hereof as **Exhibit "C"**.

19.      Upon information and belief, the investments of Geoffredo Gensini and plaintiff Walter Rusyniak provided the initial capitalization for Concha Futura, S.A.

4

20.     Upon information and belief, two other shareholders were to invest in Concha Futura, S.A. within close proximity to the initial capitalization, Roland De Montaigu and Guido Bezzera. Each represented a 25% ownership interest in Concha Futura, S.A.

21.     Upon information and belief, on or about January 10, 1981 the four shareholders held a meeting in which they amended the Articles of Incorporation.  A copy of the minutes of said meeting is attached hereto and made a part hereof as **Exhibit "D"**.

22.     At the January 10, 1981 meeting the Board accepted the resignation of Guido Bezzera and accepted the nomination of Theodore Venners as his replacement.

23.     In the Articles of Incorporation, the shareholders set forth numerous provisions, most notably that the President of the Board will be the legal spokesperson of the company, and in his absence or defection, the Vice-President, and that only the existing officers actually in office could elect new officers to fill vacancies. (See Exhibit "A").

24.     The shareholders also established that Geoffredo Gensini would serve as President, Walter Rusyniak as Vice-President, Roland De Montaigu as Secretary/Treasurer and Theodore Venners would be a member at large. In the event that Geoffredo Gensini passed away, Walter Rusyniak would take on Geoffredo Gensini's role as the legal spokesperson for the company.

25.     The Board further determined that in the case of death, physical, and/or mental disability of a member, the shares would be transferred exclusively to the member's spouse or children.  If they wished to sell the shares, the remaining shareholders would have the right of first refusal in the acquisition of the shares.

26.     Upon information and belief, following the January 10, 1981 meeting, an extended period of time passed with no communication between the shareholders.

27.     Upon information and belief, Geoffredo Gensini passed away on October 15, 1986, making Walter Rusyniak the President of Concha Futura, S.A. as provided by the Corporate Bylaws.

28.     Plaintiffs traveled to Panama in the year of 1995 to determine the status of the corporation and its members.  Plaintiffs confirmed that there had been no activity in this corporation, that the corporation remained in good standing despite its inactivity, and that the land held by Concha Futura, S.A. remained in the name of the corporation.  It was also clear from a review of the records of Concha Futura, S.A., that no ongoing annual meetings or duties were being undertaken by the corporation.

29.     In May of 2006, plaintiff Anthony Rusyniak flew back to Panama to again confirm the status of the corporation's assets, assuming that they were in the same state they had been in from 1981 to 1995, when he and his father duly confirmed the corporation was in good standing.

30.     Plaintiffs had no cause to believe otherwise, as plaintiff Walter Rusyniak was the President and sole Director of the closely-held corporation, and thus no legal activity could be conducted without notice to him and/or his presence.

31.     Upon information and belief, plaintiff Anthony Rusyniak discovered that there were investors poised to purchase the land originally sold to Concha Futura, S.A. by Geoffredo Gensini in his efforts to capitalize the corporation some twenty-five years earlier.

32.     After an extended effort, plaintiffs obtained information relating to Concha Futura, S.A. from Panamanian officials.

6

33.      Said information consisted of minutes of alleged "shareholder meetings" held by defendants.

34.      Plaintiffs had no knowledge or prior notice of any shareholder meetings, contrary to the provisions requiring due notice in the Articles of Incorporation and Bylaws.

35.      Upon information and belief, none of the legitimately elected corporate officers or members of the Board were present at any of the aforementioned meetings.

36.      More specifically, upon information and belief, in early 1996, a meeting was conducted in New York City by the spouse of the late Geoffredo Gensini, defendant Ena Paola Gensini, who claimed to be acting as President ad hoc in her husband's place.  A copy of the translation of the minutes of said meeting are attached hereto and made a part hereof as **Exhibit "E"**.

37.      Defendants had no authority to call such a meeting, as Corporate Bylaws provisions dictated that Walter Rusyniak became the President of the corporation upon Ena Gensini's death.

38.      At that meeting, Defendant Gensini was accompanied by the wife of the deceased Roland De Montaigu, Gunila De Montaigu, who claimed to be acting as Vice-President ad hoc.  Also present were Alberto A. Tile acting as Secretary/Director and Laurent De Montaigu acting as Treasurer/Director.

39.      Defendants further had no authority to name themselves as officers and directors of the corporation with no notice to plaintiff, yet they did so anyway.

40.      Upon information and belief, these new directors and officers were "elected" by defendants Gensini and De Montaigu to the Board in direct conflict with the provisions of the Corporate Bylaws. No basis exists for the creation of "ad hoc" corporate officer positions, and the

7

positions were intentionally claimed to avoid the legal necessity of dealing with the corporation's only remaining officer, Walter Rusyniak.

41.     Upon information and belief notice was purposefully withheld from plaintiff Walter Rusyniak so that defendants could implement their conspiratory scheme to defraud plaintiff of his right to govern the corporation and to share in corporate profits.

42.     Upon information and belief, defendants used this meeting to usurp plaintiff Walter Rusyniak's authority and to takeover the corporation and its assets.

43.     Upon information and belief, another meeting was held in January of 1997, wherein the "ad hoc" directors made numerous changes to the Corporate Bylaws and Agreements without any notice to plaintiff Walter Rusyniak, who according to the Corporate Bylaws, assumed the role of President upon the death of Geoffredo Gensini.  A copy of the translation of the minutes of said meeting are attached hereto and made a part hereof as **Exhibit "F"**.

44.     Once again, no notice was given to plaintiffs regarding this meeting whatsoever, by publication or otherwise.

45.     Upon information and belief, one of the changes made at said meeting was to reduce  the majority vote required to sell, lease, exchange or dispose of property or assets from 70% to 60%.

46.     At this illegitimate meeting, defendants Ena Gensini and De Montaigu fraudulently declared payment due to the corporation from plaintiff Walter Rusyniak, despite the existence of documentation to the contrary, including a Certificate of Shares indicating payment was made in full, and despite the fact that defendants had no authority vested in them by the corporate filings to act in such a manner.

8

47.     Upon information and belief, the illegitimate "ad hoc" Board further claimed that plaintiff Walter Rusyniak had forfeited his shares on the contrived and inaccurate theory that no payment had been credited, and took it upon themselves to annul his Certificate of Shares.

48.     Upon information and belief, the defendants conducted the business of Concha Futura, S.A. as if they were the legitimate Officers. As defendant Ena Gensini lived in Manlius, New York until January, 2006, defendant De Montaigu held property in Paris, and Alberto Tile, as well as the Corporation, were based in Panama, it is believed the parties coordinated meetings and conducted their covert and fraudulent affairs through written correspondence and telephone conversations between New York, Panama and/or France.

49.     Upon information and belief, there is no legitimate purpose for not including plaintiff Walter Rusyniak in the aforementioned communications.

50.     Upon information and belief, on or about June 14, 2002, defendant Ena Gensini granted her daughter, Gioia Gensini, a resident of the State of New York, a Power of Attorney over her affairs, which extended to the management of the affairs of Concha Futura, S.A.

51.     Upon information and belief, the "ad hoc" Board met again, this time in Syracuse, New York, during June of 2005.  A copy of the translation of the minutes of said meeting are attached hereto  and made a part hereof as **Exhibit "G"**.

52.     At that meeting, the "ad hoc" group voted to enter into a promise to sell the two parcels of land owned by Concha Futura, S.A. through Alberto Tile.

53.     Contrary to the provisions of the corporation's recorded filings, said meeting was held without notice to or consent of plaintiff Walter Rusyniak, despite the fact he resided in close proximity to the meeting location.

9

54.    Upon information and belief, on or about July 11, 2005, in the Republic of Panama, Alberto Tile, as a representative of the "ad hoc" officers of Concha Futura, S.A. entered into a promise to sell the parcels of land owned by the corporation to Atahualpa Panama Incorporated. A copy of the translation of the agreement is attached hereto and made a part hereof as **Exhibit "H"**.

55.    Upon information and belief, in May of 2006, defendants were aware plaintiff Anthony Rusyniak was investigating the corporation and had heard about a potential sale of the land. A copy of the e-mail from Alberto Tile advising defendants of the same and requesting permission to transfer the land within 48 hours is attached hereto and made a part hereof as **Exhibit "I"**.

56.    Despite that fact, defendants authorized the sale of land to take place immediately before plaintiff could start the sale. Specifically, upon information and belief, Gioia Gensini, acting pursuant to the aforesaid power of attorney, responded affirmatively to the aforesaid e-mail sent by Alberto Tile. (See Exhibit "I").

57.    Upon information and belief the land parcels numbered as Tracts 69191 and 1660, were both sold in April and May of 2006 respectively.

58.    Upon information and belief, defendants affirmatively acted to usurp the Corporate Bylaws executed by plaintiff Walter Rusyniak and the other owners by: (1) wrongfully declaring a forfeiture and failing to hold a formal proceeding prior to the annulment of plaintiff Walter Rusyniak's shares; (2) taking over the direction of the corporation in direct conflict with the succession provisions of the Bylaws; (3) withholding legally required notice to strip plaintiff Walter Rusyniak of his ownership interest in the Concha Futura, S.A. and its assets; (4) conspiring to intentionally misrepresent and/or omit information which should have been provided to plaintiff

Walter Rusyniak to rebut defendants' clandestine and fraudulent actions to take over leadership through false declarations of his forfeiture; and (5) selling of corporate assets without the consent of plaintiff Walter Rusyniak for their own financial gain.

**AS AND FOR A FIRST CAUSE OF ACTION
AGAINST THE DEFENDANTS FOR FAILURE TO COMPLY WITH
PANAMANIAN LAW TO ANNUL A SHAREHOLDER'S
INTEREST IN A CORPORATION**

59.     The plaintiffs repeat and re-allege each and every allegation stated above as if more fully and completely set forth herein.

60.     Upon information and belief, Panamanian Law dictates that a formal proceeding be held prior to a declaration of forfeiture and annulment of shares, allowing the accused shareholder notice of the impending forfeiture, and the opportunity to be heard so that the accusations may be rebutted.

61.     Upon information and belief, defendants violated said law in that no such proceeding has ever taken place regarding the annulment of plaintiff Walter Rusyniak's shares.

62.     According to the minutes of the January of 1997 meeting, the defendants annulled plaintiff Walter Rusnyiak's shares on the basis that "there are in the company files several letters of collection sent to the holder, with no payment having been credited." (See Exhibit "E"). In truth, no such collection letters were ever sent to Walter Rusyniak regarding Concha Futura, S.A.

63.     Upon information and belief, plaintiff Walter Rusyniak received no notice whatsoever that his shares were being forfeited.

11

64.     Upon information and belief there is no documentation in the Registry of the Republic of Panama that proper notice of forfeiture was given, or that proper procedure was followed in the forfeiture of plaintiff Walter Rusyniak's interests in Concha Futura, S.A.

65.     Plaintiff Walter Rusyniak was never informed of his alleged forfeiture or the annulment of the shares, even after said annulment took place.   He became aware of the ad hoc officers' actions in the Spring of 2006, following plaintiff Anthony Rusyniak's investigation into the matter, slightly before the sale of the property.

66.     Had plaintiff Walter Rusyniak been given such notice in a proper proceeding, he would have submitted the documentation in his possession indicating that he "is the owner of twenty five shares of the corporation, fully paid and exempt" as provided on the certificate issued on August 6, 1980 found in the Registry Book of Shares in the Republic of Panama, and that no outstanding debt was owed to Concha Futura, nor had any been demanded.  (See Exhibit "C").

67.     As a result of the defendants' failure to comply with the Panamanian Law under which the corporation was formed, plaintiff Walter Rusyniak has been wrongfully deprived of his ownership interest in the corporation he helped to form, resulting in substantial financial loss and damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST THE DEFENDANTS FOR FRAUD

68.     The plaintiffs repeat and re-allege each and every allegation stated above as if more fully and completely set forth herein.

69.     Upon information and belief, the illegal shareholder meetings which took place in early 1996, January of 1997 and June of 2005 resulted in the commission of numerous instances of fraud.

70.     Upon information and belief, notice of said meetings to plaintiff Walter Rusyniak was intentionally withheld to provide defendants Ena Gensini and De Montaigu with the opportunity to take control of the corporation without opposition from said plaintiff, a sole Director and President of the corporation.

71.     Notice would have been required to properly advise of any such meetings, as Panamanian records indicate the corporation had not held a formal shareholders meeting since 1981.

72.     Giving notice to plaintiff Walter Ruysniak would not have been burdensome, particularly since defendant Ena Gensini resided in close proximity to said plaintiff up until January of 2006.

73.     Upon information and belief, defendant Ena Gensini lived in Manlius, New York until January, 2006, defendant De Montaigu held property in Paris, and Alberto Tile, as well as the Corporation, were based in Panama.

74.     Upon information and belief, the parties fraudulently coordinated meetings and conducted their affairs including shareholders meetings between New York, Panama and/or France.

75.     Upon information and belief, defendants perpetuated fraud by the scheduling of shareholder meetings with the intent to deprive plaintiff Walter Rusyniak of his interest in the corporation.

76.     Upon information and belief, as a result of the defendants' intentional withholding of notice, plaintiff Walter Rusyniak did not attend the shareholder meetings in 1996, 1997 and 2005.

77.     During the aforementioned meetings, further fraudulent acts were committed against plaintiff Walter Rusyniak and his assets as set forth below.

78.     Upon information and belief, at the meeting held in New York City in early 1996, defendants disregarded plaintiff Walter Rusyniak's position as President and Director, called a meeting without providing notice to him, and voted themselves as officers and directors of the corporation. (See Exhibit "E ").

79.     Upon information and belief, at the January 10, 1997 meeting, defendants Ena Gensini and De Montaigu, along with the rest of their "ad hoc" officers, fraudulently declared plaintiff Walter Rusyniak owed payment to Concha Futura, S.A. for the stock he purchased during the initial capitalization process despite the evidence to the contrary set forth in the Ownership Certificate. (See Exhibit "F").

80.     Upon information and belief, the "ad hoc" officers omitted adequate legal notice to plaintiff Walter Rusyniak regarding the declared forfeiture, and annulled his shares in the corporation with no apparent authority and without appraising him of their intended actions.

81.     Upon information and belief, plaintiff Walter Rusyniak never received any notice whatsoever indicating that his interests or offices within the corporation were in jeopardy or being challenged in any manner, nor was he notified that his shares had been forfeited after the fact.

82.     On or about June 24, 2005, the defendants met in Syracuse, New York, whereupon defendants voted to enter into a contract to sell corporate assets, namely land, intentionally withholding notice from Plaintiff Walter Rusyniak.  (See Exhibit "G").

83.     Upon information and belief, during a trip to Panama in 2006 plaintiffs discovered the "ad hoc" officers were operating and holding themselves out as the legal spokespersons for the corporation.

84.     Plaintiffs further learned that on or about July 11, 2005, defendants had entered into an agreement to sell off the corporation's sole assets, two parcels of land known as parcel 69191 and 1660, effectively liquidating the corporation.

85.     Upon information and belief, defendants' agents intentionally acted in a fraudulent manner by stating that no sale of corporate assets was taking place, when in fact the defendants held a meeting in Syracuse, New York in June of 2005, during which they voted to sell such assets, and defendants entered into said agreement in a clandestine manner with no legitimate authority to do so on or about July 11, 2005.

86.     Upon information and belief the land parcels numbered as Tracts 69191 and 1660, were both sold in April and May of 2006 respectively.

87.     Plaintiffs have incurred severe financial damages by the sale of the land in the Republic of Panama, as that land represented the bulk of Concha Futura's holdings.

88.     Had plaintiff Walter Rusyniak been notified of the defendants' takeover and subsequent selling off of his corporation and its holdings, he would have been able to take appropriate measures to prevent such loss.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## THE DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

89.     The plaintiffs repeat and re-allege each and every allegation stated above as if more fully and completely set forth herein.

90.     Concha Futura, S.A. is a closely-held corporation.

91.     The shareholders in a closely held corporation owe a duty of fidelity, loyalty and good faith to one another and are prohibited from self-dealing.

92.     Upon information and belief, the defendants breached the duties owed to the plaintiff Walter Rusyniak by:

    (a)     conspiring to hold a meeting in New York City in 1996 while intentionally withholding notice to plaintiff Walter Rusyniak, the President of the corporation;

    (b)     holding an illegitimate meeting in 1996 in New York City and replacing plaintiff Walter Rusyniak as an officer and director with themselves.

    (c)     conspiring to leave New York and travel to Panama on or about January 20, 1997 to hold a shareholder meeting while intentionally withholding notice to plaintiff Walter Rusyniak;

    (d)     forfeiting plaintiff Walter Rusyniak's shares on or about January 20, 1997 with no grounds to do so, and intentionally failing to inform him of the illegal forfeiture before and after it occurred;

16

(d)       conspiring to meet again in Syracuse, New York prior to June 24, 2005 to conduct the business of Concha Futura, S.A. without advising plaintiff Walter Ruysniak of the same;

(e)       meeting in Syracuse, New York on or about June 24, 2005 to discuss the sale of the corporation's assets;

(f)       failing to advise plaintiff Walter Rusyniak they were entering into a contract to sell the corporate assets on or about July 11, 2005;

(g)       selling the corporation's land assets in May and April of 2006 with no notice to plaintiff Walter Ruysniak, with knowledge that plaintiffs were asserting their rights to the land assets, and, upon information and belief, at a price well below the actual value of the land; and

(h)       intentionally failing to advise plaintiff Walter Ruysniak of the sale and to turn over any proceeds from the sale.

93.       As a result of defendants' self dealing, plaintiffs have suffered significant financial loss.

## <u>AS AND FOR A FOURTH CAUSE OF ACTION<br>AGAINST THE DEFENDANTS FOR CIVIL CONSPIRACY</u>

94.       Plaintiffs repeat and re-allege each and every allegation stated above as if more fully and completely set forth herein.

95.       Upon information and belief, defendants knowingly agreed to defraud plaintiff Walter Rusyniak out of his interest in Concha Futura, S.A. and to convert any profits arising from said interest as evidenced by the 1996, January 20, 1997, and June 24, 2005 meetings defendants

17

attended, wherein defendants voted to forfeit plaintiff Walter Rusyniak's shares and to sell off the corporation's real estate holdings, and by the failure to give notice to the plaintiff of those meetings or the resulting financial loss plaintiff suffered as a result of defendants' actions during the meetings.

96.    Upon information and belief, defendants communicated their agreement to conceal the illegal forfeiture of plaintiff Walter Rusyniak's shares and the sale of Concha Futura, S.A.'s land through mail, e-mail and/or telephone calls between defendant Ena Gensini in New York, defendant De Montaigu in France, and the Corporation's other "ad hoc" officers in Panama so that defendants could convert the proceeds of the sale for their own financial gain at plaintiffs' expense.

97.    Upon information and belief, while defendant Ena Gensini was residing in the state of New York and defendant De Montaigu was residing in France and Panama, they intentionally conspired to knowingly defraud plaintiff Walter Rusyniak of his interest in Concha Futura, S.A. and its assets.

98.    Upon information and belief, defendants sold the land parcels numbered as Tracts 69191 and 1660 in April and May of 2006, and concealed the sales from plaintiffs, illegally converting plaintiffs' funds to their own.

99.    As a result of defendants' conspiracy, plaintiffs have suffered substantial financial harm.

**WHEREFORE**, Plaintiffs Walter Rusyniak and Anthony Rusyniak respectfully request:

(1)    judgment against defendants Ena Paola Gensini, Gunilla De Montaigu, and Concha Futura, S.A. for failure to comply with Panamanian law requiring a formal

proceeding prior to the annulment of shares awarding a minimum amount of $1,597,500.00 U.S.D. for the sale of corporate land, as well as lost profits, interests, costs, punitive damages, and any further relief this Court may deem just and proper;

(2)     judgment against defendants Ena Paola Gensini, Gunilla De Montaigu, and Concha Futura, S.A. for fraud awarding a minimum amount of $1,597,500.00 U.S.D. for the sale of corporate land, as well as lost profits, interests, costs, punitive damages, and any further relief this Court may deem just and proper;

(3)     judgment against defendants Ena Paola Gensini, Gunilla De Montaigu, and Concha Futura, S.A. for breach of fiduciary duty awarding a minimum amount of $1,597,500.00 U.S.D. for the sale of corporate land, as well as lost profits, interests, costs, punitive damages, and any further relief this Court may deem just and proper;

(4)     judgment against defendants Ena Paola Gensini, Gunilla De Montaigu, and Concha Futura, S.A. for civil conspiracy awarding a minimum amount of $1,597,500.00 U.S.D. for the sale of corporate land, as well as lost profits, interests, costs, punitive damages, and any further relief this Court may deem just and proper; and Plaintiffs respectfully request the above relief together along with any further relief as the Court may deem just and proper.

**DATED:**     **May 19, 2009**                    **COSTELLO, COONEY & FEARON, PLLC**

                                    By:     _____
                                            **ROBERT J. SMITH**
                                            **Bar Roll No. 102628**
                                            **SHELLY L. DiBENEDETTO**

19

Bar Roll No.  508989
Attorneys for the Plaintiffs,
  Walter Rusyniak and Anthony Rusyniak
Office and Post Office Address
Salina Place
205 South Salina Street
Syracuse, New York  13202-1327
Telephone:  (315) 422-1152